345 A.2d 616

**OFFICE OF the DISCIPLINARY COUNSEL,
Petitioner,**

v.

**John W. CAMPBELL, Jr., Respondent.**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1975.

Decided Oct. 3, 1975.

474

Thomas A. Livingston, Dennis J. Clark, Pittsburgh, for respondent.

Thomas J. Shannon, Pittsburgh, for petitioner.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Judge.

Respondent, John W. Campbell, Jr., has practiced law for twenty years. In December 1971 he undertook to represent Charlene McIlwaine, who was then under federal indictment for possessing approximately thirty pounds of marijuana. Immediately upon accepting her case, respondent received from her a retainer of $1,000.

During the course of his representation respondent informed his client that he could for a price "fix" her case as he had done previously in other criminal matters. He sought and received over $4,000 to allegedly arrange the suppression of fingerprint evidence. In fact, no such evidence existed.

Respondent made subsequent demands for additional money which Ms. McIlwaine was unable to furnish directly. Respondent then suggested that she contact her associates to arrange a meeting between themselves and him. Respondent wished to propose a plan for the transporting of drugs to Pittsburgh for distribution. Ms. McIlwaine agreed to do so but later contacted the federal authorities. Ms. McIlwaine and two undercover agents then met with respondent at a bar on June 1, 1972.

At that meeting respondent stated that he had used the initial money received from Ms. McIlwaine to suppress the fingerprint and other unspecified evidence. He also informed them that he needed an additional $10,000 to pay his fee and to finalize the dismissal of charges.

Respondent later told Officer Stephen F. Terscak of the Pittsburgh Police Department of his conduct in the case and that he was attempting to set up a drug transportation plan. He also asked Officer Terscak to confirm to his supposed co-conspirators that respondent had, in fact, secured the suppression of the fingerprint evidence through the efforts of Officer Terscak. Unknown to respondent, Officer Terscak agreed to play this part only to uncover the identity of the other parties to the scheme. At a subsequent meeting on June 20, 1972, respondent and Officer Terscak acted out their roles for the federal undercover agents.[1]

Later respondent was indicted by the federal authorities for using the mails to defraud. The indictment was based on the correspondence exchanged between the United States Attorney and respondent in regard to Ms. McIlwaine's drug case. Although a significant portion of the evidence outlined above was presented at trial respondent was found not guilty of mail fraud. No other charges were lodged against him.

Following his acquittal, the Office of the Disciplinary Counsel commenced proceedings against respondent.[2]

1. Other than their friendship of fifteen years, no evidence was introduced which explained why respondent believed Officer Terscak would not report the establishment of a drug ring. In any event, Officer Terscak's testimony of his own non-participation in the conspiracy is substantiated by the fact that he reported the meeting to his superiors on the following morning.

2. The charges against him stemming from his representation of Ms. McIlwaine were based on the following Disciplinary Rules of the Code of Professional Responsibility:
"DR 1–102(A) A lawyer shall not . . .
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

The matter was referred to a Hearing Committee which ultimately recommended disbarment of the respondent. The Disciplinary Board, after reviewing the report of the Hearing Committee, agreed with its decision and has petitioned this Court to disbar the respondent from the practice of law in this Commonwealth.[3]

Respondent took several exceptions to the proceeding below and here continues to object. Specifically, he maintains (1) that the evidence to support the recommendation of disbarment was insufficient, (2) that the commencement of proceedings after his acquittal in federal court violates the double jeopardy clause of the Fifth Amendment to the United States Constitution, (3) that the disciplinary rules under which he was charged are unconstitutionally vague and (4) that the consolidation of the McIlwaine matter with the other unrelated violations denied him procedural due process.

Consideration of these exceptions is more easily undertaken if we first reconsider the nature of disciplinary proceedings. In *In Re Echeles*, 430 F.2d 347, 349–50 (7th Cir. 1970), the court presented a lucid explanation of the purpose of a disciplinary action: "[D]isbarment

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"DR 7–102(A)(7) In his representation of a client, a lawyer shall not . . . counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

"DR 9–101(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."

In a separate charge respondent was cited for other violations of the Disciplinary Code. These violations arose out of four situations unrelated to the McIlwaine matter. The Disciplinary Board recommended the imposition of private reprimand in the first two situations, private informal admonition in the third, and public censure in the last. Respondent has taken no exception to the recommended dispositions of these matters. *But see* our discussion of Joinder of Charges, *infra*.

**3.** See Supreme Court Rules 17–1 *et seq.* for the rules governing procedure in disciplinary matters.

and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not law suits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. Thus the real question in issue in a disbarment proceeding is the public interest and an attorney's right to continue to practice the profession imbued with the public trust." (Citation omitted.) *Accord In Re Berlant,* 458 Pa. 439, 445, 328 A.2d 471, 473 (1974).

 We need only add that although disciplinary proceedings are sui generis, they have been styled "quasi-criminal." *In Re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed. 117 (1968). As such certain procedural and substantive rights have necessarily attached themselves to those proceedings.[4] With the unique nature of disciplinary proceedings in mind, we now turn to the exceptions of respondent in this case.

## Sufficiency of Evidence

Respondent argues that the evidence presented by the petitioner was insufficient to support the findings of the Hearing Committee with respect to his handling of the McIlwaine case. To support this argument, he merely asserts that his testimony before the Hearing Committee was more credible than that of petitioner's witnesses.

 Since our review of attorney discipline is de novo, we are not bound by the findings of the trier of

4. For example, the attorney against whom discipline is sought must be advised of the nature of the charges. *In Re Ruffalo, supra,* and he or she can assert the privilege against self-incrimination, *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

fact below but are free to evaluate for ourselves the evidence presented before the Hearing Committee. *In Re Silverberg,* 459 Pa. 107, 327 A.2d 106 (1974). However, credibility is an issue particularly within the province of the trier who views the testifying witness. *See In Re Smith,* 376 Pa. 255, 101 A.2d 710 (1954); *In Re Kraus,* 322 Pa. 362, 185 A. 737 (1936); and *cf. Commonwealth ex rel. Alexander v. Alexander,* 445 Pa. 406, 284 A.2d 721 (1971).

In this case the Hearing Committee resolved the issue of credibility in favor of the petitioner. We perceive no reason for reversing that result.

*Double Jeopardy Argument*

Respondent next contends that the imposition of any disciplinary sanction after his acquittal in federal court violates the double jeopardy clause of the Fifth Amendment where the federal prosecution and the disciplinary recommendation are based on the same evidence and arise from the same transaction. Primarily respondent premises this argument on the quasi-criminal nature of disciplinary actions, but the argument fails in both law and reason.

█ Where a single act constitutes a violation of the laws of both the state and federal governments, two prosecutions, convictions and sentences are constitutionally permissible. *See, e.g., Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971). If two *criminal* prosecutions are possible, certainly one criminal proceeding and one quasi-criminal proceeding are within permissible constitutional bounds.

█ Any argument which asserts that an acquittal on criminal charges bars a subsequent disciplinary proceeding ignores the nature of disciplinary actions. "Not only

are the parties different but the purposes of the two proceedings are different. . . . Moreover, the *quantum* or proof required to warrant discipline or disbarment is different from that demanded for conviction of a criminal charge." *In Re Pennica*, 36 N.J. 401, 418, 177 A.2d 721, 730 (1962). *Accord Krehel Appeal*, 419 Pa. 86, 89, 213 A.2d 375, 377 (1965). Consequently, "the mere acquittal of a crime will not be a bar to a suspension of the attorney's right to practice or his disbarment for unprofessional conduct, based upon the same acts or conduct involved." *In Re Echeles*, 430 F.2d 347, 352 (7th Cir. 1970). *Accord Snyder's Case*, 301 Pa. 276, 152 A. 33 (1930).

In addition to the legal defects in respondent's position, acceptance of his double jeopardy argument would have absurd consequences. The double jeopardy clause prevents subsequent trials for the same act by the same sovereign whether the initial trial results in acquittal *or* conviction. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). If disciplinary actions were viewed, for constitutional purposes, as placing an individual in jeopardy, an attorney who was convicted of a crime could not be disbarred for that crime. Likewise the imposition of disciplinary sanctions would preclude a subsequent criminal prosecution. If either action would bar the other, the state would be compelled to have in its midst an uncensured attorney who is a convicted criminal or an unpunished criminal who is a disbarred attorney. The integrity and honor of our profession would not long survive if the Constitution demanded that such a choice be made.

*Vagueness of the Disciplinary Rules*

Respondent next maintains that the Disciplinary Rules of the Code of Professional Responsibility,[5] under which

5. Rule 17–3 of the Pennsylvania Supreme Court Rules establishes the Code of Professional Responsibility as the standard by which

he was subject to disbarment, are unconstitutionally vague. *Cf. United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). We find his position unpersuasive. In all, respondent was specifically charged with violating six rules of the Code.[6] All but two of these rules specify with great clarity the conduct prohibited.

██ ██ The two exceptions are DR 1–102(A)(5) and DR 1–102(A)(6). These provide respectively that "[a] lawyer shall not . . . engage in conduct that is prejudicial to the administration of justice" and that "[a] lawyer shall not . . . engage in any other conduct that adversely reflects on his fitness to practice law." Although these two rules are arguably vague, it does not necessarily follow that appellant's disbarment under these sections is constitutionally impermissible. A regulation or statute can be validly applied to some activities even though its application to other situations might be of uncertain constitutionality. *Smith v. Goguen,* 415 U.S. 566, 578, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Where one is on fair notice that his own conduct is within that prohibited by a regulation, he cannot attack the regulation simply "because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). *See also Colten v. Kentucky,* 407 U.S. 104, 109–10, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); and *United States v. National Dairy Products Corp.,* 372 U.S. 29, 31–32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).

██ Here, the actions of respondent which formed the bases for the charges of violating DR 1–102(A)(5) and DR 1–102(A)(6) included the fraudulent receipt of

the conduct of an attorney, practicing in Pennsylvania, is to be measured.

6. See footnote 2, *supra.*

money to supposedly arrange the illegal destruction of evidence. That non-existent evidence was alleged to have been crucial to the outcome of a pending criminal matter. The respondent's assertion, however false, that he could manipulate the disposition of a criminal proceeding was "prejudicial" to the proper administration of justice.

Similarly, respondent's attempts to defraud his client and also to form a criminal conspiracy for the transporting and sale of illegal drugs clearly reflected on his fitness to practice law. As the United States Supreme Court stated in *Ex Parte Wall*, 107 U.S. 265, 274, 25 S.Ct. 569, 576, 27 L.Ed. 552 (1882): "Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws . . . argues recreancy to his position and office . . . .. It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve." Where one who has sworn to uphold the law actively conspires to breach it, his fitness to practice is unquestionably destroyed.

We need not today define with exactitude the boundaries of the conduct proscribed by Disciplinary Rules 1–102(A)(5) and 1–102(A)(6). Certainly respondent's activities were within those bounds and respondent knew or should have known that such was the case. Since respondent had fair notice that his course of conduct was prohibited by the Code of Professional responsibility, he cannot claim to have been prejudiced by the arguable vagueness of the Disciplinary Rules when applied to other hypothetical situations.[7]

7. It is clear that case law can sufficiently clarify an otherwise vague enactment. *See, e. g., Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *United States v. Vuitch*, 402 U.S. 62, 71, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971). Numerous Pennsylvania disciplinary cases have resulted in the imposition of sanctions when an attorney has engaged in criminal conduct.

*Joinder of Charges*

█ █ Appellant next contends that the Hearing Committee's consideration of six charges in a single proceeding violated his rights to due process. Specifically, he maintains that he was prejudiced because the consolidation, "in the total picture of things," gave the appearance of wrongdoing. What respondent ignores is that the function of the disciplinary proceeding is to determine the continued fitness of an attorney to practice law. *In Re Alker*, 398 Pa. 188, 157 A.2d 749 (1960). That determination can only be made by viewing the "total picture" of his professional conduct. Isolated instances of misconduct may be individually insufficient to support disbarment. However, a number of such instances, although unrelated, when considered together, can demonstrate such complete disregard for professional standards that disbarment is necessitated.

█ Where as here an attorney has received notice of the charges against him and is given an opportunity to be heard, due process is satisfied. *In Re Ruffalo, supra; Coughlan v. United States*, 16 Alaska 407, 236 F.2d 927 (9th Cir. 1956); *Staud v. Stewart*, 366 F.Supp. 1398 (E.D.Pa.1973); *In Re Shigon*, 462 Pa. 1, 329 A.2d 235 (1974). He cannot complain simply because his fitness to practice is to be measured against several charges rather than one.

█ What is disturbing, however, is that the Hearing Committee, after considering each of the charges against respondent, recommended the imposition of separate dis-

*See, e. g., Montgomery County Bar Ass'n v. Hecht*, 456 Pa. 13, n. 8, 317 A.2d 597, 601 n. 8 (1974); *In Re Brodstein*, 408 Pa. 84, 182 A.2d 181 (1962); *In Re Alker*, 398 Pa. 188, 157 A.2d 749 (1960); *Stone v. Board of Governance of Pennsylvania Bar*, 312 Pa. 576, 579, 168 A. 473 (1933); *Margolis's Case*, 269 Pa. 206, 112 A. 478 (1921). These cases placed respondent on notice that the participation in criminal activity subjected him to the possibility of disbarment as unfit to practice law. They eliminate, to a degree, the vagueness ascribed to DR 1–102(A)(6).

ciplines. If the disciplinary proceeding were considering the totality of an attorney's conduct to evaluate his fitness to practice, only one of two results could ensue from that consideration. Either the attorney would be deemed fit to practice or he would be subjected to discipline. But that discipline must necessarily be imposed as a unit for that which was determined, fitness or unfitness, was of a unified nature. Where sanctions are recommended for each separate violation, what the Committee has measured is the propriety of an attorney's conduct in a specific, isolated situation and not his entire professional conduct.

Separate disciplinary measures were recommended in this case for each of five charges. Thus, this principle of unified consideration of an attorney's conduct was transgressed. However, the Hearing Committee's and petitioner's recommendation with respect to the McIlwaine case was that respondent be disbarred. Since we agree that disbarment could properly be imposed if that were the only charge against respondent, it is certainly justified where that change is combined with others.[8]

### Conclusion

In view of our decision in regard to consolidation, the recommendations of the petitioner for discipline in case number 32 D.B. 73 are rejected. The recommendation of petitioner for discipline in case number 26 D.B. 73 is accepted and respondent is ordered disbarred.

MANDERINO, J., concurs in the result.

8. Like the petitioner our research has uncovered only one reported case which directly addresses the issue of consolidation. In that case the Supreme Court of South Carolina rejected the contention that consolidation is improper. *In Re Benedict*, 254 S.C. 481, 175 S.E.2d 897 (1970).

Other disciplinary cases have dealt with situations involving several charges. *See, e. g., In Re Ruffalo, supra; In Re Sarelas*, 360 F.Supp. 794 (N.D.Ill.1973); *Schwebel v. Orrick*, 153 F.Supp. 701 (D.D.C.), *aff'd* 102 U.S.App.D.C. 210, 251 F.2d 919, *cert. denied*, 356 U.S. 927, 78 S.Ct. 716, 2 L.Ed.2d 759 (1957). In none of these cases was the issue of consolidation raised, but in each only one sanction was imposed.