## In re Anonymous No. 65 D.B. 75

Disciplinary Board Docket no. 65 D.B. 75.

ANDERSON, *Board Member,* February 7, 1977 —Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petition for discipline no. 65 D.B. 75 against respondent.

## I. HISTORY OF PROCEEDINGS

On November 20, 1975, the office of disciplinary counsel (disciplinary counsel) filed before the board a petition for discipline against respondent charging him with the following:

### Charge 1
### [A]

Charge 1 arises out of respondent's alleged representation of [A] on or about August 2, 1969, in a trespass case against one [B]. In December of 1969, respondent relayed a settlement offer of $3,000 from [B's] insurance company to his client. [A], after this initial offer, heard nothing further from respondent. She made repeated calls and numerous requests for a status report, but respondent would not reply to same. In addition, several appointments were made by respondent with [A], all of which were subsequently not kept. In or about June of 1972, respondent was contacted by the grievance committee of [    ] county on three separate occasions, seeking a rectification of the matter. All of these requests were for naught. Although respondent indicated that he would correct the matter, he did nothing to effectuate same. The statute of limitations expired on [A's] cause of action on or about August 1971, and respondent filed neither a complaint nor summons in trespass. Respondent never informed his client of the running of the statute until the filing of a complaint to the disciplinary board. It is charged that respondent's actions involved a violation of:

a.  D.R. 1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice.

b.  D.R.  1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law.

c.  D.R.  6-101(A)(3)—Neglect a legal matter entrusted to him.

## Charge 2
### [C]

Charge 2 allegedly arises out of respondent's representation of [C] in or about the beginning of 1970, in a trespass case against one [D]. [C's] auto accident occurred on or about December 23, 1968. In July of 1970, respondent caused a writ of summons in trespass to be executed on behalf of [C], but did not cause said writ to be served upon defendant. In July of 1970, [C] supplied requested statements from his employer and doctor to respondent and never heard from respondent again. [C] contacted respondent in June of 1972 and January of 1973 requesting a status report of his case, but received no answer. After receiving no satisfaction, [C] requested his file in order to retain new counsel. In July of 1972, the statute of limitations expired on [C's] cause of action without respondent filing summons or complaint. Respondent did not advise [C] that the statute had expired, nor what actions could be taken to protect his interest. It is charged that respondent's action involved a violation of:

a.  D.R.  1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice.

b.  D.R.  1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law.

c.  D.R.  6-101(A)(3)—Neglect a legal matter entrusted to him.

d. D.R. 9-102(B)(4)—Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## Charge 3
### [E]

Charge 3 arises out of the alleged retention of respondent in two separate causes of action of [E]. Respondent was hired in June of 1968 to institute legal action against the U.S. Government by [E] because of the accidental shooting death of his son, [E, Jr.], which occurred in Fort Devens, Massachusetts on May 29, 1968. Respondent never instituted any legal action in this case and the statute of limitations expired. Respondent never informed the client of this fact.

The second case arose from injuries received by [E] and his wife in an automobile accident on or about September 4, 1968. Respondent was engaged by [E] to institute legal action in trespass to recover damages for the injuries suffered. Respondent instituted legal action in this case by filing a writ of summons in [   ] county on or about July 2, 1970. Said writ of summons was never served upon defendant. The statute of limitations in this matter expired, but respondent never advised [E]. [E] made several appointments to discuss the case but they were never kept by respondent. It is charged that respondent's actions involved a violation of:

a. D.R. 1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice.

b. D.R. 1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law.

c. D.R. 6-101(A)(3)—Neglect a legal matter entrusted to him.

## Charge 4
### [F]

Charge 4 arose when respondent was retained by [F] in July of 1965 to institute a libel suit against [Mr. and Mrs. G]. Respondent filed a complaint on behalf of [F] in October 1969. On September 17, 1971, respondent filed a stipulation of counsel to continue said matter for settlement and did nothing further with the case. He never answered any inquiries from the clients. It is charged that respondent's actions involved a violation of:

a. D.R. 1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice.

b. D.R. 1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law.

c. D.R. 6-101(A)(3)—Neglect a legal matter entrusted to him.

## Charge 5
### [H]

These allegations arise from respondent being retained by [H] in June 1970, to represent him in a case in which he was injured in a traffic accident in [I town]. In July of 1973, [H] signed a release given

him by respondent and was advised by respondent that a settlement check would be forthcoming within two weeks. From the period July 1973 to July 1974, [H] or his wife allegedly made numerous telephone calls to respondent, but they were not returned. Appointments also were made with respondent, which were not kept. It is further alleged that the [ ] Insurance Company, the insurer of [I town], wrote and telephoned respondent on numerous occasions to discuss the [H] case. Respondent never responded to the inquiries. The case was finally settled in September of 1974 for $2,500. Respondent also allegedly advanced $500 to [H] to be repaid upon settlement. It is charged that respondent's actions involved a violation of:

a. D.R. 1-102(A)(4)—Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

b. D.R. 1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice.

c. D.R. 1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law.

d. D.R. 5-103(B)—While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

e. D.R. 6-101(A)(3)—Neglect a legal matter entrusted to him.

## Charge 6
### [J]

This charge arises out of respondent being hired by [J] to institute legal action against [K] as a result of an automobile accident. It is alleged that on or about March 25, 1970, respondent wrote to the insurance adjuster for the [   ] Mutual Insurance Company, demanding a settlement of $40,000. A representative of the insurance company attempted on numerous occasions to contact respondent to discuss settlement to no avail. On September 2, 1970, respondent filed a writ of summons, but said writ was never served upon defendant. In September of 1972, the statute of limitations expired on any claim by [J] for bodily injury. Respondent never informed [J] of this fact, nor would he have any contact in regards to the matter. It is further alleged in Charge 6, that in May of 1970, [J] engaged respondent to represent his interests against the [L] Construction Company for deficiencies in work done on [J's] residence. Respondent failed to act on his client's behalf, and in November of 1972, [L] filed a complaint in assumpsit against [J]. [J] also engaged respondent to institute legal action against the [M] company in [N] township. Respondent is alleged to have instituted no legal action in this matter. Respondent's failure to take action brought an inquiry from the fee dispute committee of [   ] county. Respondent did not respond to this inquiry or others that followed. [J] engaged other counsel. It is charged that respondent's actions involved a violation of:

a. D.R. 1-102(A)(5)—Engage in conduct that is prejudicial to the administration of justice.

b. D.R. 1-102(A)(6)—Engage in any other conduct that adversely reflects on his fitness to practice law.

c. D.R. 6-101(A)(3)—Neglect a legal matter entrusted to him.

On December 4, 1975, an appearance of counsel for respondent was entered, accompanied by a request for an extension of time to file an answer. This request was granted until December 25, 1975. No answer was filed, and the matter was referred for disciplinary hearing to hearing committee [ ].

Hearing was held on March 3, 1976, in [ ], Pa. Respondent was represented by [ ], and the disciplinary board by [ ]. At this hearing, testimony was taken and a stenographer was present. Respondent and others testified in his behalf. On May 10, 1976, hearing committee [ ] filed its report, finding that the evidence sustained the charges in five of the cases and recommended that respondent be suspended for three months. On May 10, 1976, a letter was received from chief disciplinary counsel that petitioner would not submit exceptions to the hearing committee report, but reserved the right to file briefs opposing any exceptions which counsel for respondent may file. A request for an extension of time to file brief on exceptions was received on May 11, 1976, and subsequently granted. On June 18, 1976, a brief on exceptions was filed by respondent and oral argument was requested. The brief opposing such exceptions was filed by petitioner on July 7, 1976. On August 2, 1976, oral argument was heard by a panel of the disciplinary board, consisting of [ ], Chairman, [ ], and [ ]. At the closing of these oral arguments, this matter was referred to board member [ ] for review and recommendations.

## II. FINDINGS OF FACT

The report of the hearing committee in regards to its findings of facts as to each of the charges, is supported by the evidence and is adopted by the board as its own. The board finds as follows:

In *Charge 1*—The board finds that respondent was engaged to represent plaintiff in a personal injury case in which she was injured on August 2, 1969. In December of 1969, he relayed an offer of settlement in the amount of $3,000 to his client and advised her not to accept this offer. Subsequent to this offer, respondent had no other contact with his client. His client attempted to reach him by telephone on numerous occasions and further had many appointments made with respondent broken by respondent. As of 1976, no complaint nor writ of summons had been filed by respondent for his client and the period for the statute of limitations had expired in August of 1971. Respondent had not advised his client that he did not institute legal proceedings on her behalf.

*Charge 2*—The board finds that respondent was engaged to represent [C] in a personal injury case which arose from an accident caused by [D] on December 23, 1968. Respondent was retained in early 1970 and filed a writ of summons in July 1970. Said writ was not served on defendant. Respondent, on or about July 8, 1970, requested and received from his client the statements from his employer and physician. [C] wrote respondent on numerous occasions, the last being January of 1973, requesting a status report on his case. These requests, as well as numerous telephone calls, were never answered by respondent. The statute of limitations had expired

in this case on July 8, 1972, and respondent had allowed this statute to expire and never communicated this knowledge to [C].

*Charge 3*—The board finds that respondent was engaged by [E] in June of 1968 to file legal action as a result of the accidental shooting of his son, [E, Jr.], on May 29, 1968, at Fort Devens, Massachusetts. Respondent did not file any legal actions in this case and the statute of limitations was allowed to expire. This knowledge was not communicated by respondent to [E]. In addition, in Charge 3, the board finds that respondent was engaged by [E] and his wife to represent them in a personal injury case resulting from an automobile accident on September 4, 1968. He subsequently filed a writ of summons on or about July 2, 1970, but never had it served on defendant. Respondent also permitted the statute of limitations to expire in this case and never communicated this to [E].

*Charge 4*—The board finds that respondent was retained by [Mr. and Mrs. F] on July 8, 1965, to institute an action in libel. Respondent filed complaint in [ ] county and subsequently on September 17, 1971, filed a stipulation of counsel continuing the case for settlement. Respondent had been instructed by his clients to litigate the matter but as of the filing of the instant charges, respondent has not done so nor has he formally withdrawn his apperance as counsel. Respondent has not kept in contact with his clients although they have asked for status reports on numerous occasions.

*Charge 5*—The board finds that respondent was engaged to represent [H] as a result of injuries suffered by him in a traffic accident in [I town] in June 1970. In December of 1973, [H] executed a paper and was told that a settlement check for $5,000

would be forthcoming within a week. This check was never delivered to [H]. From July 1973 to July 1974, neither [H] nor his wife was able to contact respondent by telephone. During this period of time, the [ ] Insurance Company wrote respondent on numerous occasions to discuss the [H] case, but to no avail. The case was settled in December of 1974 for $2,500. Respondent had also advanced $500 to [H], to be repaid upon settlement. The board additionally finds that respondent suggested to his client that charges should be dropped against respondent if respondent settled the case.

*Charge 6*—The board finds that respondent was retained to institute an action stemming from an automobile accident suffered by [Mr. and Mrs. J] in January of 1969. Respondent demanded from the [ ] Mutual Insurance Company a $40,000 settlement for his clients. A representative of [ ] attempted on numerous occasions to contact respondent to discuss this settlement, to no avail. The statute of limitations expired on September 20, 1972, without respondent initiating any legal proceedings. Respondent never told his client this fact, nor did he discuss the case, although they made numerous attempts to contact him. The board further finds as to Charge 6, that respondent was retained by [J] to represent his interests against a construction company for alleged poor workmanship on plaintiff's residence. Respondent was retained on or about May 1970, but had not acted for plaintiff by November 16, 1972. As a result of this inaction, the construction company filed a complaint in assumpsit against respondent's client. It is further found by the board that the same plaintiff engaged respondent to institute legal action against a pipeline company in [N] township. Re-

spondent instituted no legal proceedings and [J] sought assistance from the fee dispute committee of [  ] county. Respondent's clients made numerous telephone calls to his office over a period of years—at least 200 telephone calls—but respondent never answered the great majority of said calls. Respondent further neglected these clients by not keeping appointments that he had made with them. Respondent was discharged by plaintiffs and their files returned after great difficulty.

## III. DISCUSSION

There is no doubt that respondent's conduct is prima facie a complete abdication of an attorney's basic responsibilities and duties owed to his client. The six charges all contain clear evidence of respondent's complete disregard for the legal matters entrusted to him. He has repeatedly violated D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6) and D.R. 6-101(A)(3).

Respondent's inattention caused the loss of legal redress to four of his clients, and in two instances, [E] and [J], this included more than one cause of action. The [H] case, which was finally settled by the prodding of this disciplinary action, had been so delayed as to cause the client unjustified discomfort. Even though the [F] cause of action did not impress the hearing committee, it was the same pattern of neglect and dereliction. We do, in any case, agree with the hearing committee's opinion that this case does not represent guilt as to any violation of the disciplinary code.

We totally reject the testimony of respondent in

attempting to excuse the irresponsible behavior. There is no explanation for such complete dereliction of duty. Respondent not only allowed his clients' causes of action to extinguish, but did so during a period when he was constantly reminded that said causes existed. His total disregard of his clients as manifested by his active course of non-communication only compounds the unethical conduct. It can only leave a bitter feeling with his clients and adversely affect their regard for the legal profession. The lack of communication in not making his clients aware of his wrongdoings—missing the statute of limitations—only conveys to the board and the hearing committee the possibility of a flaw in respondent's character. It was very possible that this lack of communication was primed by more than just a fear of accepting the responsibility to inform his clients of his wrongdoing. It could easily have been interpreted as a desire to avoid payment to his clients because of his failure to file within the statute. The hearing committee did not make this latter interpretation nor did the board. Although the board and hearing committee agree that there was a violation of D.R. 9-102(B)(4) in regards to the [H] case, the interpretation here was that the neglect of the delivery of funds was due to the reckless and well documented procrastinating legal procedures of respondent.

The board is greatly alarmed by respondent's total neglect of the matters entrusted to him. The pattern exhibited in these type cases is one that must be examined carefully. This present case brings to the fore the gravity of this problem and the subsequent disciplinary action necessary to deter it.

The board and hearing committee were presented with a perplexing problem. Hearing committee [ ] had recommended earlier disciplinary action against respondent for activities of a similar nature. These matters arose in 1970 to 1974. Petitions for discipline were filed on July 19, 1973, in 38 D.B. 73, involving one count of delay in handling an estate of [O] and November 16, 1973, in 59 D.B. 73, involving the incompetent representation of [P] in an action for divorce; incompetent representation of [Q] before the civil service commission; and the incompetent representation of [R] in a real estate transaction. Hearings were held by hearing committee [ ] on January 23, 1974, and February 8, 1974. All of these matters dealt with respondent's dilatory and incompetent conduct in handling these legal matters. The hearing committee in its report dated May 14, 1974, found respondent's conduct violative of Disciplinary Rule 6-101(A)(3) of the Code of Professional Responsibility in 38 D.B. 73 [O] and two charges of 59 D.B. 73 [P and R]. The hearing committee recommended dismissal of the [Q] matter. The hearing committee further recommended a private reprimand in the [O] and [P] matters, and made no recommendation with respect to the [R] matter. The disciplinary board, on July 26, 1974, approved the recommendation of the hearing committee and on September 20, 1974, a private reprimand was administered to respondent.

An examination of the record shows that two of the charges presently before the board were received by the office of disciplinary counsel subsequent to hearing committee [ ]'s evidentiary hearing and decision, but prior to the imposition of the private reprimand by the board. The other four charges were filed subsequent to the private rep-

rimand, but were for conduct that occurred prior to the disciplinary action. The six charges contained in 65 D.B. 75 took place within the same time context as did the earlier infractions.

The hearing committee was justifiably alarmed by what it interpreted as a further flagrant and lingering disregard of the rules of professional responsibility. It says, on page 2, in its report as follows: "The hearing board was mindful of a prior disciplinary record for similar misconduct by respondent, which conduct existed during the same period of time that the alleged offenses described herein transpired. Your hearing board, however, was not mindful of these additional charges at the time it imposed a penalty of informal admonishment on the first occasion." There is an intimation that the hearing board might have recommended more severe treatment of respondent had it within its knowledge all of the violations now before it. It is truly unfortunate for the hearing committee that this was not the case, but the office of disciplinary counsel was unable because of its procedures to achieve this at the time.

The board agrees with the hearing committee that punishment is merited by respondent, but it does not agree with the severity. When respondent originally appeared before this board for his private reprimand, he was admonished that the size of his practice and inadequacies of his office procedure had greatly affected the servicing of his clients. His involvement in various community groups and projects were no excuse for his flagrant dereliction to his clients. It was recommended by the board that he reduce and restructure his practice and personal life to allow his clients to receive the full benefits of his legal talents. The board felt this was

necessary for the protection of the public and integrity of the legal profession. Respondent in the instant case presented evidence that he had acceded to the board's admonition and had put his house in order. Respondent's conduct must be looked at in its totality and although ". . . a number of such instances, although unrelated, when considered together, can demonstrate such complete disregard for professional standards that disbarment is necessitated": Office of Disciplinary Counsel v. Campbell, 463 Pa. 472, 345 A. 2d 616, 622 (1975); it also must be examined in light of certain mitigating circumstances: In this case, respondent's apparent good faith attempt in ascribing to the wishes of the disciplinary board.

This board cannot overlook the negligent conduct of respondent and does find ample reason for public discipline at this time. But the board feels that it must temper the hearing committee's recommendation of three months' suspension. Respondent has altered his office priorities and improved his attitude towards the responsibility owed to his clients and his approach to his chosen profession. He has apparently taken the steps necessary to restore him to the ranks of his profession where he will bring credit to himself and his vocation. He should consider himself fortunate that he has been given an opportunity to show the improvement. This improvement must be considered as mitigating circumstances to respondent's credit.

It was further pointed out to the board members hearing oral argument in the instant case, that after a change in counsel, respondent has initiated efforts to see that the clients who have suffered any pecuniary losses will be indemnified.

## IV. RECOMMENDED DISCIPLINE

The disciplinary board has found that respondent has violated disciplinary rule D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6), D.R. 6-101-(A)(3) and D.R. 9-102(B)(4). Although the hearing committee recommended a three-month suspension, it is the recommendation of the board that respondent [ ] be disciplined by the imposition of public censure by the Supreme Court.

## ORDER

EAGEN, *C.J.* And now, February 28, 1977, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, dated February 7, 1977, recommending that [respondent] be subjected to public censure by the Supreme Court, are hereby approved; and it is ordered and decreed, that said [respondent] be subjected to public censure by the Supreme Court, as provided in Rule 204(3) of the Rules of Disciplinary Enforcement, at the session of this court commencing April 12, 1977, at Philadelphia.