**In re Anonymous Nos. 57 D.B. 73 and 44 D.B. 75**

Disciplinary Board Dockets nos. 57 D.B. 73 and 44 D.B. 75.

FOLEY, *Board Member,* February 11, 1977 — Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania

(board) submits its findings and recommendations to your honorable court on the separate recommendations of the hearing committees on two petitions for discipline, no. 57 D.B. 73 and no. 44 D.B. 75, against respondent.

## I. HISTORY OF PROCEEDINGS

On November 16, 1973, the office of disciplinary counsel (disciplinary counsel) filed before the board a petition for discipline against respondent, to no. 57 D.B. 73 charging him with various acts in violation of the Code of Professional Responsibility and Canons of Professional Ethics.

Respondent filed no answer to said petition and in due course the matter was assigned to hearing committee [   ] consisting of [   ].

Respondent elected to represent himself in the proceedings.

On August 9, 1976, the hearing committee submitted a revised report recommending a two-year suspension of respondent. No exceptions to the report were filed within the prescribed time and the matter was referred to this board for review and recommendation.

On June 20, 1975, disciplinary counsel filed before the board a petition to no. 44 D.B. 75 charging respondent with various acts in violation of the Code of Professional Responsibility and Canons of Professional Ethics. Respondent filed no answer to the petition and the matter was assigned to hearing committee [   ] consisting of: [   ]. The first hearing was held on September 3, 1975, at which respondent elected to represent himself. At a subsequent hearing on October 1, 1975, respondent was represented by counsel. On February 26, 1976, the hearing committee submitted a comprehensive report including 141 findings of fact and recommended disbarment of respondent.

Respondent has appealed from the actions and rulings of the hearing committee in 44 D.B. 75. This board adopts the findings and conclusions of the eminent hearing committee but under the authority of Office of Disciplinary Counsel v. Campbell, Jr., 463 Pa. 472, 345 A. 2d 616 (1975), this board in reviewing the record and the report of both of the hearing committees taking into consideration the totality of respondent's conduct in order to evaluate his fitness to practice, unanimously recommends that respondent be disbarred.

## II. DISCUSSION

The report of the hearing committee in 57 D.B. 73 carefully analyzed the evidence with respect to each of the three charges contained in the petition and dismissed two of them but found respondent in violation of the Canons of Ethics in the matter of the Estate of [A]. In 44 D.B. 75, the hearing committee found violations in all five of the charges contained in the petition filed against respondent. But for purposes of our discussions and recommendations to your honorable court, we need only review the major charges, all of which involve misappropriation of clients' funds in support of our recommendation that respondent be disbarred.

### [A] *Estate*

[A] died intestate on July 19, 1970. Subsequently, letters of administration were granted to decedent's sister, [B], on September 17, 1970. Thereafter, [B] turned over to respondent all of decedent's bills, social security records, bank books, title to motor vehicles and other documents necessary to administer the estate. From the aforesaid date until the hearing before the panel on February 13, 1974, respondent failed to pay the funeral bill, the debts of decedent or file an inheritance tax return. Among the assets of the estate was a savings account in the

[C] Bank with a balance at the date of death of $14,742.92, which on September 18, respondent closed out, received a cashier's check and opened an account in the [D] Bank in the name of the Estate of [A], deceased, [B], administratrix, % [respondent], with an opening balance of $15,438.73. On June 7, 1974, the aforesaid account reflected a balance of $13.73. The evidence revealed that the administratrix never signed the signature cards for the opening of the aforesaid account, did not make or authorize any withdrawals from said account nor did the heirs receive any distribution.

Furthermore, although subpoenas were issued, respondent failed to produce any bank records or other records concerning the handling of the funds of the estate, nor did he appear at the second and third hearings in this matter, at which testimony was taken in his absence.

[E] *Matter*

Respondent was retained by [E], widow of [Mr. E], who was killed in an auto accident, to receive and manage moneys she obtained from life insurance policies on her husband's life. On April 21, 1972, she turned over a check in the amount of $19,469.54 of which he deposited $3,969.54 in an account in his name as agent for [E] and $5,000 in a savings account in Trust for [E]. An accounting for the balance of the proceeds of $10,500 from the check was not made. Subsequently, on May 1, 1972, respondent received a second check from [E] from insurance proceeds which she endorsed over to respondent and which he deposited in the "[E] checking account."

Thereafter, from time to time, respondent cashed checks on the [E] checking account without accounting for their disposition to the sum of $3,160.05. Subsequently, on or about July 3, 1972,

respondent deposited $9,000 in the [E] checking account from an unexplained source and then drew a check on the aforementioned account to his own order and deposited it in his own account using the proceeds for the purchase of his personal residence.

Sometime prior to February 21, 1973, respondent gave [Mr. F], husband of [E] (now [Mrs. F]) $900 cash. On February 21, 1973, he gave [E] a check in the amount of $8,100 from a source other than the [E] checking account or [E] savings account, which she used to purchase a residence.

In an attempt to explain the unaccounted for moneys, respondent contended that he made five $1,000 *cash* payments to [E], but did not have any records to substantiate said allegation, which [E] denied and which explanation the hearing committee rejected, together with his claim for $4,000 legal fees for which an agreement was lacking.

[G] *Estate*

On August 2, 1973, [G], daughter of [Mrs. H] was killed and respondent was retained as attorney for the estate. Subsequently, a check in the amount of $20,263.32, payable to [Mrs. H], was received and she endorsed the same over to respondent. Said funds were deposited in his attorney's account on February 8, 1974, which account contained other client's funds. On April 29, 1974, the funds in said account declined to $6,061.71 with no moneys having been paid for or on behalf of the estate. Thereafter, [H] made repeated demands for distribution and an accounting, but said demands were refused or ignored until Mrs. [H] consulted attorney [I] and subsequently, the office of the district attorney of [   ] County, as a result of which on June 20, 1975, respondent made an accounting and distribution of the funds.

[J] *Estate*

In 1965, respondent was retained by [Mrs. J] to

represent her husband's estate. He collected for the estate the sum of $1,252.09 from the [K] Electric Company representing decedent's accrued payroll, unused vacation allowances and a savings bond account. From the proceeds, respondent paid [Mrs. J] $600 and retained an agreed upon fee of $100, but failed to account to date for the balance of $552.09 which he used for his own purposes.

Throughout both proceedings, respondent has shown a complete and utter lack of respect for the hearing committees by failing to honor subpoenas for the production of records, failure to attend scheduled hearings and offering a cavalier defense. As the hearing committee stated, in 44 D.B. 75, at page 22: "Furthermore, respondent failed to show any remorse for his wrongdoing when he willfully and corruptly swore falsely to all of the material facts in the case."

Respondent did offer mitigating circumstances which he presented to the hearing committee in no. 44 D.B. 75 by way of a transcript of a habeas corpus proceeding, against his wife for custody of his children (Exhibit R-3) namely: a wife who was an alcoholic with resulting marital problems culminating in a divorce and serious behavioral problems of his children, all of which were given great weight by this board. But, we cannot overlook the cold facts that the course of conduct reflected in respondent's practice goes back to the year 1965 and continued into 1975. Such conduct shows the complete disregard respondent had for his clients, the Code of Professional Responsibility and the Canons of Ethics.

### III.  RECOMMENDATION

The board recommends that respondent be disbarred forthwith in accordance with Rule 204 of the Pennsylvania Rules of Disciplinary Enforcement.

678

## ORDER

JONES, *C.J.,*—And now, February 28, 1977, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, dated February 8, 1977, recommending that pursuant to Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement, that [respondent] of [ ] County, be disbarred from the practice of law in the Commonwealth of Pennsylvania, are hereby approved; and it is

Ordered, that said [respondent], be, and he is hereby disbarred from the bar of the Supreme Court and in all the courts under the supervisory jurisdiction of the Supreme Court of Pennsylvania.

Petition for Reconsideration denied.

Mr. Justice Roberts did not participate in the consideration or decision of this petition.