**In re Anonymous Nos. 26 D.B. 73 and 32 D.B. 73**

Disciplinary Board Docket Nos. 26 D.B. 73 and 32 D.B. 73.

PADOVA, *member,* November 17, 1986 — To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

Pursuant to rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your Honorable Court with respect to this petition for reinstatement.

## HISTORY

Petitioner, [    ], was disbarred by order of the Supreme Court dated October 7, 1975, for reasons set forth in its opinion reported at 463 Pa. 472, 345 A.2d 616 (1975).

On November 11, 1981, petitioner filed a petition for reinstatement which received favorable consideration from both the hearing committee and the board, which recommended that petitioner be reinstated to the practice of law. The Supreme Court did not accept the board's recommendation, and in an order dated March 15, 1984, denied the petition for reinstatement.

On May 24, 1985, petitioner filed another petition for reinstatement which was assigned to hearing committee [   ], consisting of [   ], which held hearings on the petition for reinstatement on September 13, and October 4, 1985.

Following these hearings, the committee submitted a report and recommendation[1] based upon the findings of fact and conclusions of law in its report, which are adopted by the board and incorporated herein.

## FINDINGS OF FACT

(1) Petitioner received a B.S. degree from the University of [   ] on September 8, 1950, and LL.B. on June 15, 1955. He was admitted to the bar of the Supreme Court of Pennsylvania on December 8, 1957, whereupon in various capacities he engaged in the practice of law until shortly before an order of disbarment was entered by the Supreme Court on October 7, 1975.

(2) Beginning in 1969 and continuing through 1975, petitioner became alcohol-dependent which adversely and materially affected his personal and professional life and his physical well-being, sub-

---

1. Hearing committee member [        ] dissented from the recommendation that reinstatement be granted.

stantially contributing to the conduct for which he was ultimately disbarred.

(3) Following his disbarment, petitioner established residence in [J] where he resided at various intervals in his sister's home and in his personal apartment until February 1985, when he established his residence at [K].

(4) Petitioner was unable to obtain employment following his disbarment until May 1977, at which time he was employed by [A] Construction Co. as a contract administrator in [L]. He was employed with the company until sometime in 1980, at which time the company filed bankruptcy proceedings, and petitioner's job was terminated in consequence thereof. Thereafter, he was employed by [B] company as a contract administrator for approximately six months. Thereafter, aside from rendering gratuitous services for [C] Inc., a company owned by his brother-in-law, he was not employed until March 1986, when he was employed by [D] Inc., as a consultant. Since his employment with [D] Inc., petitioner has worked 10 to 12 hours a day, six days a week, and earns approximately $600 a week.

(5) During the period of his disbarment, petitioner maintained his interest in law and attempted to keep abreast with the developments in the law. He reviewed all of his law school notes which he had retained, and while employed by [A] Construction Co., he reviewed the advance sheets and publications concerning the Uniform Commercial Code. He also visited the legal office of [E] in [J], and reviewed advance sheets. He attended a six-to-eight-weekend law review course conducted by [F] in [M], and in the fall of 1985, attended a bar review course offered by the Pennsylvania Bar Institute at

[ ]. Additionally, he subscribed to and read periodicals concerning Pennsylvania Crimes Code and the Federal Bankruptcy Code.

(6) Subsequent to petitioner's disbarment, he initially tempered his alcohol consumption, and since late 1979 or early 1980, he was totally abstained from alcohol. As a result thereof, petitioner has regained both his physical and mental health, and is no longer alcohol-dependent.

(7) Petitioner acknowledges that the conduct for which he was disbarred was reprehensible and expressed regret therefor.

## CONCLUSIONS OF LAW

Petitioner has demonstrated, by clear and convincing evidence, that:

(1) He has the moral qualifications, competency, and learning in law required for admission to practice law in this commonwealth.

(2) His resumption of the practice of law within the commonwealth will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest.

## DISCUSSION

Petitioner clearly met the burden of proof placed upon him concerning his competency and learning in the law required for admission to practice in this commonwealth.

What is at issue in this proceeding is whether petitioner met the burden of demonstrating by clear and convincing evidence that he has the moral qualifications and that the resumption of practice by him will be neither detrimental to the integrity and standing of the bar or the administration of justice, not subversive to the public interest.

Disciplinary counsel's vigorous opposition to the petition for reinstatement is bottomed upon the belief that petitioner does not possess the requisite moral qualifications for the practice of law, and in support thereof, advances the following arguments:

(1) There is no cause and effect relationship between petitioner's alcohol abuse and the conduct (the [G] matter) which led to his disbarment, and therefore, alcohol rehabilitation does not necessarily render him morally qualified to resume the practice of law.

(2) Petitioner's alleged conversion or mishandling of certain funds entrusted to him (the [H] matter) and false testimony concerning the same.

(3) Petitioner's failure to satisfy or otherwise challenge a judgment entered against him on June 28, 1978, in favor of [H], in the amount of $44,550.

(4) Petitioner's alleged failure to disclose in his initial reinstatement questionnaire the existence of an IRS debt or lien (the omitted IRS lien).

(5) Petitioner's alleged misstatement of facts concerning his failure to file federal income tax returns for the years 1969 through 1972 and the failure to pay the tax liabilities thereon.

(6) Petitioner's alleged misstatement of facts in an application for employment (the [I] incident).

The cause and effect argument, the [H] matter, and the circumstances surrounding the failure to file federal income tax returns for the calendar years 1969, 1970, 1971 and 1972 were considered and rejected by the hearing committee and the board in its report of November 15, 1983, to the Supreme Court recommending reinstatement, and we are not disposed to reach a contrary result, especially since the record in both reinstatement proceedings is substantially the same. Moreover, both hearing committee [  ] and the board reach the same conclu-

sions, independent of the prior findings and conclusions of the previous hearing committee and board.

The record is replete with many differing contentions concerning petitioner's handling of the [H] matter, his failure to file income tax returns for the calendar years 1969, 1970, 1971 and 1972, his response to inquiries concerning the same, and how these matters impact upon petitioner's moral qualifications to practice law. We need not make a determination as to the correctness of either party's position since, assuming the [H] and income tax return matters did in fact constitute transgressions, it would not be appropriate or fair to deny a petition for reinstatement on the basis of those transgressions since they occurred either contemporaneously with or prior to the transgression for which petitioner was disbarred and from which he now seeks reinstatement.

The focal point of an inquiry concerning the moral qualifications of a disbarred or suspended attorney to resume the practice of law should be the conduct and rehabilitiative efforts of the attorney during the period of disbarment or suspension. If the focal point of the inquiry was the period of time during which the transgressions occurred, then it would be utterly impossible for a disbarred or suspended attorney to successfully seek reinstatement.

Petitioner has not satisfied the judgment entered against him and in favor of [H], in the amount of $44,550. Although there may be uncertainties in the record, one thing is certain — petitioner does not owe [H], the sum of $44,550, and but for the fact that judgment was obtained by default, with no notice to petitioner, and with questionable service on the Secretary of the Commonwealth, judgment would not have been entered. Under these circum-

stances, the failure to pay in whole or in part does not reflect adversely upon petitioner's moral qualifications to engage in the practice of law. Moreover, it may be amply discerned from the record that petitioner was not in a financial position to pay in whole or in part the IRS debt or lien, and therefore, his failure to do so likewise does not reflect adversely upon his moral qualifications to engage in the practice of law.

Petitioner's failure to disclose his disbarment in an application for employment (the [I] incident) does not reflect adversely upon his moral qualifications as there was no duty under the circumstances to voluntarily disclose such disbarment and, knowing the consequences thereof, the board can well appreciate and understand why a disbarred attorney would be reluctant to voluntarily do so.

The committee correctly found no duty on his part to voluntarily make such a disclosure and that his failure to disclose his disbarment did not reflect adversely upon his moral qualifications. In fact, when his prospective employer discovered his status as a disbarred attorney, the job offer was withdrawn. It must be pointed out that there is no evidence that petitioner at any time held himself out to be a practicing attorney nor that he was authorized to practice law in any jurisdiction. The position which petitioner sought at [I] was one for which he was highly qualified and required his engineering proficiency and was not considered a legal position. When asked whether his status as a disbarred attorney affected his employability he concisely stated:

"It most assuredly did. I specifically lost the [I] job because of it. When the fact that I had been disbarred surfaced, other people . . . I had several interviews and they asked me whether or not I was a licensed attorney. I indicated I was not. They asked

why. At that point, I had to tell them that I had lost my license and that concluded the matter."

## RECOMMENDATION

Upon consideration of the testimony given, the hearing committee's careful and thoughtful evaluation of the facts and of the objections made by disciplinary counsel to the granting of petitioner's application for reinstatement, the board recommends to the Supreme Court that the petition for reinstatement be granted and that the costs of this proceeding by paid by petitioner.

Mr. Padova files a dissenting opinion in which Mr. McDonald & Dr. Gilbert join. Ms. Heh did not participate in the adjudiciation.

## DISSENTING OPINION

To the Honorable Chief Justice and Justices
of the Supreme Court of Pennsylvania:

The board's report concerning this matter recommends the reinstatement of an attorney who was disbarred for fraudulently inducing his client to pay him over $15,000 on his assurance that he could, for a price, "fix" her case as "he had done previously in other criminal matters." The attorney sought and received over $4,000 of this sum to allegedly arrange the suppression of fingerprint evidence when, in fact, no such evidence existed. That nonexistent evidence was alleged by the attorney to have been crucial to the outcome of the pending criminal matter involving his client. Petitioner then sought to obtain from his client an additional $10,000 to pay his fee and to "finalize the dismissal of the charges." When the client could not come up with the additional money, Petitioner suggested that she contact her nefarious associates to arrange

for a meeting at which petitioner would propose a plan for the illegal tansportation of drugs to [ ] in order to raise such additional sum. The client complained to the federal authorities, and two federal undercover agents, posing as the client's associates, together with a member of the [N] Police Department, met with petitioner and acted out their roles with respect to petitioner's proposal to go into the business of drug trafficking in order to raise money to have the client's case fixed.

In the court's opinion which imposed the sanction of disbarment upon this petitioner, 463 Pa. 472, 345 A.2d 616 (1975), at page 622, the following statement was made:

"Similarly respondent's attempts to defraud his client and also to form a criminal conspiracy for the transporting and sale of illegal drugs, clearly reflected on his fitness to practice law. As the United States Supreme Court stated in *Ex Parte Wall*, 107 U.S. 275, 274 (1882): 'Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws . . . argues recreancy to his position in office. . . . It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve.' *Where one who has sworn to uphold the law actively conspires to breach it, his fitness to practice is unquestionably destroyed.*" (emphasis supplied).

The board's instant report and recommendation focuses entirely on whether or not petitioner's fitness (which the court had held to be destroyed) has been, since that time, restored. Frankly, unlike the majority of the board, I have not been as clearly and convincingly persuaded by the evidence that his fitness has been restored. However, the compelling

reason for this dissent is my sensitivity to the recent pronouncement of the court in office of *Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). In *Keller,* supra, at page 875, the court, in a unanimous opinion, stated the following:

"When reinstatement is sought by the disbarred attorney, the threshhold question must be whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon 'the integrity and standing of the bar or the administration of justice nor subversive of the public interest.'"

By this language, I believe that your Honorable Court has directed that the board, when considering whether or not to recommend the reinstatement of a *disbarred* attorney, must *first* focus on the impact of the disbarred lawyer's transgressions upon the system. In that connection, the board in its report recommending disbarment, dated October 25, 1974, stated at p. 12 the following:

"We can think of *no more flagrant* conduct than that engaged in by the respondent in this case. He made a mockery of the system of justice and violated the oath of office which he solemnly swore to uphold when he was given by this court the unique privilege to practice law in the commonwealth." (emphasis added).

Quite simply put, I think that the magnitude of the breach of trust by petitioner in this case and the seriousness of his attempted subversion of the administration of justice do not permit his resumption of practice at this time without further injury to the integrity and the standing of the bar and the public perception of, and confidence in, our system. By this dissent, I do *not* intend to indicate to the court that the matter of the reinstatement of [petitioner] should be forever closed; rather only, that when I

focus, at this time and on this record, on whether petitioner's reinstatement could *now* be accepted without detriment to the integrity and standing of the bar and the administration of justice, I must conclude that it cannot.

As I understand the implications of *Keller*, supra, the threshold inquiry articulated by the court presents a burden which must be carried by the disbarred lawyer who seeks the reinstatement. Although disbarment is an extreme sanction which is only imposed in the most egregious cases, within the ambit of such offenses, there is a graduation which results in an inverse relationship between the magnitude of the breach of trust and the likelihood of reinstatement. The greater the magnitude of the breach, the more difficult it will be for the disbarred lawyer to carry *his* threshhold burden of establishing that the fact of his reinstatement at that time would not, of itself, be inimical to the standing and integrity of the bar or subversive of the public interest. It is this burden which the record does not address, either by way of evidence or argument. I recognize the difficulty inherent in a burden of proving a negative. However, I believe that *Keller*, supra, has intended that burden as being inherent in the qualitative difference between reinstatement of the suspended lawyer and reinstatement of the disbarred lawyer. I therefore dissent from the board's recommendation for reinstatement.

## ORDER

And now, this March 6, 1987, upon consideration of the recommendation of the disciplinary board dated November 17, 1986, and the dissenting opinion filed in the above matter, the petition for reinstatement is denied.

Pursuant to rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Zappala dissents and would accept the recommendation of the disciplinary board and grant reinstatement.