## In re Anonymous No. 5 D.B. 79

Disciplinary Board Docket no. 5 D.B. 79

ANDERSON, *Vice Chairman,* October 2, 1980—Pursuant to Pa.R.D.E. 208(d) the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

### I. HISTORY OF PROCEEDINGS

Respondent is an attorney admitted to practice law in the Commonwealth of Pennsylvania, with his main place of business being [ ], Pa.

Respondent was contacted by the Office of Disciplinary Counsel (hereinafter referred to as petitioner) with a series of letters stating alleged charges against respondent and giving him an op-

portunity to state his position with respect to said charges. The series of letters are dated from December 11, 1978 through January 8, 1979.

On February 15, 1979 a petition for discipline was filed by the office of petitioner. No answer was filed within the prescribed time and on March 19, 1979 the matter was referred to a hearing committee. At the behest of the hearing committee chairman, a notice of a pre-hearing conference was mailed on April 17, 1979 setting the date for this conference at May 16, 1979. Additionally, on April 17, 1979 a notice for a hearing was sent to respondent scheduling it for May 22 and May 24, 1979.

On May 8, 1979 an entry of appearance as counsel for respondent was entered by respondent's attorney, who then appeared at the pre-hearing conference on May 16, 1979 and after some discussion with the chairman, was allowed to withdraw his appearance. Respondent's attorney related to the chairman that he had talked to respondent on May 2, 1979, at which time he was requested by respondent to represent him at the hearing. It is clear from that conversation that respondent was aware of the hearings. Respondent's attorney stated he attempted to contact respondent on numerous occasions at both his residence and at respondent's company to no avail.

The chairman explicitly expressed that the hearing committee would be prepared to proceed on May 24, 1979, 10:00 am, and the case would not proceed by stipulation, but by the testimony of witnesses. The hearing was held on May 22, 1979 and May 24, 1979. Respondent did not appear at this hearing, nor did he have counsel present. Evidence was taken from the witnesses and ended on May 24, 1979.

Approximately 18 witnesses appeared before the hearing committee. The report of the hearing committee was filed on January 10, 1980 with a recommendation of disbarment on Counts I and II, and public censure on Counts III and IV. On January 11, 1980 a copy of the report of the hearing committee was mailed to all parties. On January 21, 1980 a letter was mailed to the secretary of the board stating that disciplinary counsel would not file briefs on exceptions. By January 31, 1980 no objections had been filed by respondent as required under the rules. On February 1, 1980 the case was referred to the full Disciplinary Board of the Supreme Court of Pennsylvania.

On November 14, 1979 some six months subsequent to the hearing, respondent requested a second hearing alleging he had not been advised of the hearings on May 22 and May 24, 1979. Petitioner had shown in the hearing of May 22, 1979 that numerous attempts had been made to notify respondent of the hearings and showed through affidavits and an investigator's testimony that this had been done. The chairman properly proceeded with the initial hearing and properly denied the second hearing. Respondent did not show adequate reason to reopen the case, nor did he sufficiently explain his absence from the hearings in May 1979.

## II. FINDINGS OF FACT

Charge 1—Decedent #1's Estate

1. On January 4, 1978 decedent #1 died testate, a resident of [   ] County.

2. Respondent was retained as an attorney and took out letters testamentary on February 27, 1978, naming himself and a relative of decedent #1 co-executors of the estate.

3. Respondent, accompanied by the co-executor, opened a checking account in the name of decedent #1's estate with the [ ] Bank in [ ]. Both parties had signing authority on this account.

4. On March 13, 1978, respondent drew a check in the amount of $10,000 to the order of [ ] company and deposited this check into the [ ] company account.

5. Respondent, who was president and chairman of the board of [ ] company, executed this check without the knowledge or permission of the co-executor or beneficiary.

6. Respondent knew from his own knowledge that [ ] company was in serious financial trouble. On June 15, 1978 respondent, in his capacity as an attorney, filed for a petition for arrangement under Chapter XI of the Bankruptcy Law and failed to include decedent #1's estate as a creditor in the schedule filed for [ ] company.

7. On May 16, 1978, respondent drew a check from the decedent #1's estate account to the order of [A] for $1,500.

8. [A] was a vice president of [ ] company and at the direction of respondent, endorsed and cashed said check and gave the proceeds to respondent.

9. The check contained a notation which said it was for reimbursement for transfer inheritance tax, although no transfer inheritance tax had been paid.

10. [A] was not authorized or entitled to receive funds of the decedent #1's estate.

11. Respondent embezzled, converted or improperly diverted the proceeds of the $10,000 and $1,500 checks for his own purposes or for the use of [ ] company.

12. Respondent placed a notation on the $1,500 check to conceal the true nature of the transaction.

13. Respondent neglected decedent #1's estate by:

a. Not filing an inventory within three months of the death of decedent;

b. Failing to make partial payment of inheritance tax within three months of the date of death of decedent to get the available discount on taxes due;

c. Not preparing for filing any inheritance tax within the nine-month period after decedent's death, as required by the Pennsylvania Inheritance and Estate Tax Act;

d. Subjecting decedent's estate to continued interest and penalties by his failure to pay the inheritance tax due.

14. Respondent has neither reimbursed nor accounted to decedent #1's estate for any part of the $11,500 figure taken from the estate.

15. Respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(3), which prohibits a lawyer from engaging in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

c. D.R. 1-102(A)(6), which prohibits a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law;

d. D.R. 5-105(B), which prohibits a lawyer from continuing multiple employment if the exercise of the lawyer's independent professional judgment on behalf of a client is likely to be adversely affected by representation of another client or if it would be likely to involve him in representing differing interests;

e. D.R. 6-101(A)(3), which prohibits a lawyer from neglecting a legal matter entrusted to his care;

f. D.R. 7-101(A)(1), which prohibits a lawyer from intentionally failing to seek the lawful objectives of a client through reasonably available means permitted by law and Disciplinary Rules;

g. D.R. 7-101(A)(3), which prohibits a lawyer from intentionally prejudicing or damaging a client during the course of the professional relationship;

h. D.R. 9-102(B)(3), which requires a lawyer to render appropriate accounts to the client regarding all funds, securities and other properties of a client coming into the possession of the lawyer; and

i. D.R. 9-102(B)(4), which requires a lawyer to pay or deliver to the client as requested by the client the funds or other properties in the possession of the lawyer which the client is entitled to receive.

## Charge 2—Decedent #2's Estate

1. In September of 1976 decedent #2's son retained respondent as attorney to probate the estate of his father.

2. Decedent #2's son was the executor of the estate and did on September 21, 1976, along with respondent, sign and file a petition for probate and letters testamentary.

3. In November of 1976, respondent opened an account in the name of decedent #2's estate and further requested decedent #2's son to sign blank checks for respondent to use for estate purposes.

4. On March 1, 1977, respondent caused a check in the amount of $20,000 to be written on the decedent #2's estate payable to the order of [   ] company.

5. On March 24, 1977, respondent deposited this

check in the [ ] company account and these funds were used to satisfy the company's weekly payroll. Respondent received a salary check from this payroll.

6. The aforementioned transaction was done without the knowledge or permission of the executor or beneficiary.

7. Respondent was the president and chairman of the board of [ ] company and had a personal financial interest in this company.

8. In November of 1977, respondent informed decedent #2's son that $20,000 had been used to purchase an interest bearing note payable in March of 1978, but never divulged the nature of the investment or his interest in [ ] company.

9. Although respondent obtained a judgment note in the name of decedent #2's estate from [ ] company he neither revealed its existence nor made decedent #2's son aware of it.

10. In June of 1978, respondent, as attorney for [ ] company filed a petition for arrangement under Chapter XI of the Bankruptcy Law, but failed to include decedent #2's estate as a creditor on the schedule filed on behalf of [ ] company.

11. In September of 1977, respondent drew a check from the decedent #2's estate for $500 payable to the order of [B] with a notation that the check was used to reimburse attorney [W] for legal fees.

12. Attorney [W] had represented the decedent #2's estate in a civil matter at the request of respondent and had received no fee because of a prior debt owed to respondent.

13. In January of 1977, respondent drew a check to his own order from the decedent #2's estate in the amount of $5,386.50, with a notation that the check was for legal fees, transfer tax guarantee and estate expenses advance.

14. Respondent had actually paid expenses on the estate in the amount of $1,420.87.

15. Respondent neglected the decedent #2's estate by:

a. Not filing an inventory within three months of the death of decedent;

b. Failing to make partial payment of inheritance tax within three months of the date of death of decedent to get the available discount on taxes due;

c. Not preparing for filing any inheritance tax within the nine-month period after decedent's death, as required by the Pennsylvania Inheritance and Estate Tax Act;

d. Subjecting the decedent #2's estate to continued interest and penalties by his failure to pay the inheritance tax due.

16. In August of 1978, decedent #2's son discharged respondent and after numerous attempts to secure the records of the estate and its funds, he petitioned respondent to compel the delivery of both.

17. Respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(3), which prohibits a lawyer from engaging in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

c. D.R. 1-102(A)(6), which prohibits a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law;

d. D.R. 5-105(B), which prohibits a lawyer from continuing multiple employment if the exercise of the lawyer's independent professional judgment on behalf of a client is likely to be adversely affected by

representation of another client or if it would be likely to involve him in representing differing interests;

e. D.R. 6-101(A)(3), which prohibits a lawyer from neglecting a legal matter entrusted to his care;

f. D.R. 7-101(A)(1), which prohibits a lawyer from intentionally failing to seek the lawful objectives of a client through reasonably available means permitted by law and Disciplinary Rules;

g. D.R. 7-101(A)(3), which prohibits a lawyer from intentionally prejudicing or damaging a client during the course of the professional relationship;

h. D.R. 9-102(A), which requires a lawyer to deposit client funds in an identifiable bank account which does not contain funds belonging to the lawyer;

i. D.R. 9-102(B)(3), which requires a lawyer to render appropriate accounts to the client regarding all funds, securities and other properties of a client coming into the possession of the lawyer; and

j. D.R. 9-102(B)(4), which requires a lawyer to pay or deliver to the client as requested by the client the funds or other properties in the possession of the lawyer which the client is entitled to receive.

## Charge 3—[C] Matter

1. In August of 1977, respondent was retained by [C] to represent him in a divorce proceeding which was initiated by [C's] wife who caused a petition for support and a divorce a.m.e.t. to be filed in 1976 against [C].

2. Upon the receipt of one-half of his $5,000 fee, respondent caused a counterclaim for divorce a.v.m. to be filed in January of 1978.

3. A counterclaim for divorce a.v.m. had been filed by [C's] former attorney.

4. In March 1978, the attorney for [C's] wife filed a preliminary objection to respondent's complaint and additionally made a request for a bill of particulars.

5. [C's] wife was represented originally be attorney #1 and then by co-counsels attorney #2 and attorney #3.

6. Respondent took no action with respect to the preliminary objections or the bill of particulars, despite repeated communications from both attorneys #2 and #3.

7. In June of 1978, [C] became dissatisfied with respondent and retained another attorney.

8. In July of 1978, [C's] new attorney requested that respondent withdraw his appearance, refund $2,000 of the $2,500 retainer and send the [C] file to him.

9. Respondent, after numerous attempts at communication, called [C's] new attorney on October 18, 1978 and stated that he would turn over the file upon payment of the balance of the $5,000 fee.

10. In August of 1978, [C] complained to the Disciplinary Board of the Supreme Court of Pennsylvania about respondent's failure to return both his file and the $2,000.

11. In response to the Disciplinary Board's inquiry of respondent, he replied he had spent considerable time negotiating with counsel and [C's] wife to settle the matter and he was entitled to the $5,000 fee. He additionally reinforced his desire to withdraw his appearance and forward the file upon the payment of the additional $2,500.

12. Respondent held no conferences towards an

16

agreement with either attorney #2 or attorney #3. There was no evidence as to whether or not he held such discussions with attorney #1.

13. Respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(6), which prohibits a lawyer from engaging in conduct which reflects adversely on the lawyer's fitness to practice law;

b. D.R. 2-110(B)(4), which requires a lawyer to withdraw from representation of a client before a tribunal upon discharge by the client; and

c. D.R. 6-101(A)(3), which prohibits a lawyer from neglecting a legal matter entrusted to his care.

Charge 4—Transfer to Inactive Status

1. On November 18, 1977 by order of the Supreme Court of Pennsylvania, respondent was placed on inactive status for failure to pay the annual registration fee.

2. On November 27, 1977 a letter was sent to respondent by Nan Cohen, Secretary of the Disciplinary Board, enclosing a letter and a copy of the Supreme Court order placing him on inactive status.

3. Respondent did not receive this letter, although numerous attempts to inform him were made by certified mail.

4. A notice of this transfer to inactive status was published in a local newspaper of general circulation and the [   ] County Law Reporter on two separate dates.

5. On July 27, 1978, respondent paid the registration fee and was removed from inactive status.

6. During the period of his inactive status, respondent represented decedent #1's estate and decedent #2's estate, filed a petition for arrangement under Chapter XI for the [    ] company and represented [C] in a divorce proceeding.

7. Respondent failed to inform his clients he was on inactive status and unable to actively practice law.

8. Respondent failed to file with the Disciplinary Board of the Supreme Court of Pennsylvania a statement of compliance, as required by the rules.

9. Respondent violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(1), dealing with violating a Disciplinary Rule;

b. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on fitness to practice law; and

c. D.R. 2-110(B)(2), dealing with mandatory withdrawal where an attorney's continued employment will result in a violation of a Disciplinary Rule.

## III. DISCUSSION

Respondent has engaged in the basest of conduct for an attorney. He has betrayed the oath and the trust put in him by his colleagues and the public in general. He engaged in a myriad of activities that have shown him to be most unfit to continue in the practice of law. His diverse unethical and illegal acts have been lucidly chronicled in the hearing committee report. It is a thorough examination of an attorney whose moral fiber has deteriorated to a point at which he has become a burden to his profession.

Respondent in his handling of the decedent #1 and decedent #2 estates approached both with a cavalier attitude towards principle and purpose. He converted sums of money from both estates directly for his own purposes and indirectly for his own purposes through the [    ] company. He compounded these embezzlements by making false notations to disguise the true purpose of the transactions. He used the moneys produced by these checks to pay off the debts of a company of which he was the president and chairman of the board and had a significant financial interest. He never revealed his interest in this business, nor did he reveal the investments of the estates' moneys in this company. His acts of deception and misrepresentation would foul even the most contaminated waters. Dishonesty and deceit permeate the handling of both estates.

Respondent showed no appreciation to the fact that the attorney-client relationship is quite unique and is based on a confidence so inviolate it approaches the relationship of priest and confessional. He violated this confidence in engaging in multiple employment by investing his clients' funds in the [    ] company. He forged a wedge which developed into a gaping chasm in the attorney-client relationship when he filed for reorganization under bankruptcy of [    ] company and never listed either estate as a creditor. During all of these acts, he never received the permission or the authorization of the executors or beneficiaries. He knew the investments he made were not in the best interests of his clients because of his intimate knowledge of the precarious financial health and the imminent financial failure of [    ] company. He did not seek the lawful objective of his clients and has flagrantly breached his fiduciary duties to them. All of these

acts involve moral turpitude as has been defined by our Supreme Court and witnessed in many earlier cases before this board. His activities reached such a nadir that in the decedent #2 estate, the moneys he embezzled and gave to [   ] company were for the payment of employe salaries of which his own was included.

The neglect of the estates was of a continuing nature and caused their assets to be dissipated. He did not file inventories, nor comply with the Pennsylvania Inheritance and Estate Tax Act. He cost the estates money in interest and penalties which if he had performed his duties correctly, would never have occurred. Neither estate has been reimbursed for misappropriated moneys nor has an accounting been made.

Respondent compounded his sinister actions by involving other persons. His use of attorney [W] in the decedent #2 estate and his use of [A] in the decedent #1 estate, showed his complete disregard for his responsibility to the public. He purposely lied about attorney [W's] services and caused a check to be written in the name of attorney [W] for services rendered when in fact he knew the services rendered were paid through the cancellation of a debt attorney [W] owed to respondent. [A] was unwittingly and unwillingly duped into abetting respondent's action by way of his subordinate position in [   ] company.

Through all four charges there was woven a thread which shows respondent engaging in conduct which reflects adversely on a lawyer's fitness to practice law. The [C] matter is a prime example of an attorney becoming so hardened in his position that he feels he can go to any length to justify his inadequacy or inability to perform the job for which he has been retained. It is as if through stubborn-

ness and intransigence his very suspect position will be justified. Additionally, he was so reckless and irresponsible he could not even fulfill his obligation to his profession. He did not pay his annual registration fee to the Supreme Court and was placed on the inactive list. In violation of the rules and a direct order of that court he continued to practice law. It is this blatant disregard for any of the components that make for a good attorney that we have addressed. The four charges are a prime example of the respondent's lack of seriousness towards his activities as an attorney. He knew or should have known that he failed to pay his registration fee. He disregarded or avoided the service of all communications from the Supreme Court and the Secretary of the Disciplinary Board. This avoidance of communication and lack of response is found in respondent's actions from the time of the commission of the various acts up and to the completion of the hearing committee report.

The hearing committee recommended a disbarment on Charges 1 and 2, and public censure on Charges 3 and 4. It is well established in Office of Disciplinary Counsel v. Campbell, 463 Pa. 472, 345 A. 2d 616 (1975), that disciplinary matters are to be examined in their totality and any discipline is to come as a result of a decision on the entire matter and not through separate recommendations for the several charges contained in any petition. The board heartily endorses the hearing committee's sentiments and agrees there is no place in our profession for persons of the caliber of respondent, a man who has fallen from the pinnacle of a good attorney and person to the depths of a common thief. The board therefore recommends respondent be disbarred.

## IV.  RECOMMENDATION

For the reasons set forth above, the Disciplinary Board recommends to your honorable court that respondent be disbarred on the basis of the findings set forth in Counts 1, 2, 3 and 4.

## ORDER

O'BRIEN, *C.J.*, And now, January 27, 1981, there having been entered by this court an order dated November 10, 1980, suspending respondent immediately and a rule issued upon him to show cause why he should not be disbarred in accordance with the recommendation of the Disciplinary Board of the Supreme Court dated October 2, 1980, and the said respondent having failed to answer the said rule to show cause, it is ordered that the rule be and is hereby made absolute and the said respondent is hereby disbarred from the practice of law in accordance wth Pa.R.D.E. 204(1) from this court and all the courts in Pennsylvania until further order of this court.