## In Re Anonymous No. 21 D.B. 82

Disciplinary Board Docket No. 21 D.B. 82.

ELLIOTT, Member, January 3, 1984—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of The Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition for discipline against [Respondent] (respondent) on April 6, 1982, who has a long history of disciplinary recidivism, and is presently serving a 21 month suspension as a result of the 11th separate disciplinary matter filed against him, based cumulatively on a total of 15 separate disciplinary charges found against respondent.[1] The present matter now involves 43 new alleged violations (not including those withdrawn at the hearing) from nine separate clients and nine separate disciplinary charges. Respondent repeatedly took money from a client, then became virtually impossible for the client to contact. Respondent does not return phone calls or answer letters; distressingly fails to attend scheduled judicial hearings; and then does not return the unearned money to clients, if at all, until forced to do so by Disciplinary proceedings. Respondent unfortunately abuses the privilege of practicing law to the detri-

---

1. 10/20/82-21 month suspension (2 charges); 3/11/82-informal admonition; 6/22/81-3 month suspension; 6/15/79-private reprimand; 3/9/77-informal admonition; 8/31/77-informal admonition; 6/18/76-informal admonition (after disciplinary hearing); 1/10/75-informal admonition; 5/29/73-censure by letter [ ] Bar Assn., 2 charges); 3/8/71-letter of admonishment [ ] Bar Assn.); 4/24/70-reprimand [ ] Bar Assn., 3 charges).

ment of his clients. Respondent's repeated pattern of disciplinary abuses is "prejudicial to the administration of justice" and has repeatedly injured the unsuspecting public.

The instant petition alleged violations of D.R. 1-102(A)(3) and (4) and (6), D.R. 6-101(A)(3), D.R. 7-101(A)(1) and (2) and (3), and D.R. 9-102(B)(3) and (4) in connection with nine separate charges. Respondent filed no answer to the petition for discipline. The parties entered into a stipulation of facts concerning one charge for submission to the hearing committee (Exhibit 1) and hearings were held before a hearing committee on June 11, 1982, September 23, 1982, September 28, 1982, October 20, 1982, November 2, 1982 and April 22, 1983.

The opinion of the hearing committee was filed on August 11, 1983. The committee found that respondent had violated D.R. 9-102(B)(3) which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into possession of a lawyer and to render appropriate accounts to the client regarding them (Charge I); D.R. 6-101(A)(3) which prohibits an attorney from neglecting a legal matter entrusted to him (Charge V), and D.R. 7-101(A)(1) which prohibits an attorney from intentionally failing to seek the lawful objections of a client through reasonably available means permitted by law and Disciplinary Rules (Charge V). No other violations alleged in the petition were found. The committee, however, noted that respondent was already serving a two-year suspension for similar violations of the Disciplinary Rules and recommended that no further discipline be imposed.

## II. STATEMENT OF FACTS

Each of the separate disciplinary actions are reviewed individually.

A. Charge I: [A]

[A] ("[A]") was a defendant in the case of [A's wife] v. [A], C.P. No. [    ] ([        ] County), February term, 1973, an equity action involving partition of and title to certain real estate which plaintiff and defendant owned (Findings of Fact paragraphs 1, 2). On or about October 21, 1973, [A] retained respondent to represent him in the aforesaid proceeding and paid respondent $500 as a retainer fee. Respondent neither requested nor received from [A] any additional fee for his professional services. (Findings of Fact paragraph 3, 4).

In or about December, 1975, [A] paid respondent $4,000 in anticipation of [A] purchasing his wife's interest in the real estate which was the major subject of the aforesaid proceeding. (Findings of Fact paragraph 5). Between April 18, 1979 and September 11, 1979, [A] paid respondent additional sums of money totaling $7,801.69 (including the $4,000 payment referred to in above). This money was intended to complete the court ordered settlement by which [A] was to purchase his wife's interest in the real estate referred to above. (Findings of Fact paragraph 6). Respondent kept all of the funds given to him by [A] at respondent's home until on or about August 22, 1980 when he instructed his daughter, [B], to take [A's] money and deposit it in a safe deposit box at a [    ] County Bank. This safe deposit box was in respondent's daughter's and wife's names. (Findings of Fact paragraph 7).

Although [A] gave respondent a total of $7,801.69 to conclude the settlement with his wife, the settlement which was the subject of a 1975 court order was never concluded. After paying the money to re-

spondent, [A] had difficulty getting in touch with respondent who repeatedly failed to return phone calls. Respondent also failed to respond to several letters sent to him by [A]. Respondent failed to attend a hearing in the matter in March, 1981. Finally, respondent returned the $7,801.69 to [A] only after a Disciplinary Inquiry was started and a hearing scheduled. Even then, respondent forced [A], a man with a manifest reading disability, to sign a statement purportedly expressing satisfaction with respondent's handling of the case before he returned the client's money. Respondent never told [A] what was done with the money while it was in respondent's possession.

B. Charge II: [C]

The petition for discipline charged respondent with accepting a retainer from [C] ("[C]") without informing [C] at the time of accepting the retainer that respondent was suspended from the practice of law, and failing or refusing to return the unearned fee. [Petition for Discipline paragraphs 33-45).

[C] had been arrested for murder by The [ ] Police Department (10/20/82 Transcript at pp. 125-25). He called respondent on July 6, 1981 to represent him and respondent set up an appointment that day. (10/20/82 Transcript at p. 126). At that meeting, respondent told [C] he would represent him, and he needed a $1,000 retainer to start the case (10/20/82 Transcript at p. 126). At that time, respondent had already received a copy of this court's June 22, 1981 order suspending him from the practice of law effective July 22, 1981. [C] paid the retainer and respondent agreed to take the case. Respondent did not tell [C] that he had been suspended from the practice of law, despite the fact that a preliminary hearing on [C] was scheduled for July 24, 1981, two days after respondent was to start

his suspension. Respondent attended the July 24, 1981 preliminary hearing, which was eventually postponed, after his suspension by order of the Pennsylvania Supreme Court was already effective. He did not tell [C] at that time that he was suspended and could not represent him. Respondent never told [C] he was suspended but told him another lawyer, Attorney [D], would represent him. Respondent told [C] he would charge him $500 for obtaining Attorney [D] and return the remaining $500. Respondent never returned any of the $1,000. [C] used another attorney for his trial.

Charge III: [E]

The petition for discipline charges that respondent had agreed with [E] to represent her son in a criminal matter prior to his suspension from the practice of law. (Petition for Discipline Paragraph 36). Prior to the date of his suspension, respondent allegely failed to respond to [E's] requests for information on the status of the case. (Petition for discipline Paragraph 54). After his suspension, respondent alegedly failed to notify [E] or his client; failed to withdraw from the case; failed to return the files; and failed to return the portion of the retainer that was unearned. (Petition for Discipline Paragraphs 150-53).

The hearing committee found that respondent did not send [E] notice of his suspension as required by the Disciplinary Rule 2-110(B)(2) (Findings of Fact Paragraph 10). Moreover, [E] suffered from respondent's standard neglect of timely communication with his client. She made a number of calls and sent a number of letters to which she received no reply. She was not told by respondent that he was suspended, but found out through a niece who worked in another lawyer's office. (Id. at p. 78). She

then sent another letter, to which respondent never replied. Respondent's secretary told her another lawyer, Attorney [F], had been given the file and would now represent her. [E] paid $3,700 to respondent and another $800 to Attorney [F], none of which was ever returned or accounted for. (Id. at 94-45).

Charge IV: [G]

The petition for discipline charged that respondent had undertaken to represent [G] ("[G]") in a criminal matter prior to his suspension. Although respondent properly notified [G] of his suspension, he allegedly failed to return files to [G] or honor demands for return of the unearned portion of his prepaid fee. (Petition for Discipline Paragraphs 57-65).

The hearing committee found that the new attorney obtained to represent [G] had tried to call respondent but her phone calls and letters received no reply. (Findings of Fact Paragraph 14). Neither [G] nor his new attorney ever received the file, but they never went to Respondent's office to obtain it. (Findings of Fact Paragraph 15). The hearing committee further found that [G] was dissatisfied because of respondent's inaccessability to discuss the case. (Findings of Facts Paragraph 10). Thus, the hearing committee concluded that "Respondent can be faulted for his shoddy office procedures which resulted in his failure to respond adequately" to [G] or his new attorney, but they did not feel it amounted to a disciplinary violation.

Charge V: [H]

[H] was having problems with water seepage in the basement of his home 5430 [   ] Street, [   ] which appeared to be coming from the common wall with 5432 [   ] Street (Finding of Fact Paragraph 1). On November 14, 1979 [H] met and con-

sulted with respondent who agreed to represent him. (Findings of Fact Paragraph 13). On November 14, 1979 [H] paid respondent $50 and on November 29, 1979 an additional $950. There was no writing setting forth the extent or basis of the representation. [H] understood that the payment of $1,000 covered everything that had to be done. (Findings of Fact Paragraphs 4-6). Respondent claimed that if a law suit was necessary he wanted compensation in addition to the $1,000, on the basis of 25 percent of any amount that was recovered.

Between November 1979 and August, 1980 [H] repeatedly called respondent, but was not successful in contacting him. (Findings of Fact Paragraph 8). [H] received a letter dated August 7, 1980 from respondent setting up a meeting for Wednesday, August 13, 1980 at 4:30 P.M. On a date preceding the August 13, 1980 meeting, [H] received from respondent's associate a complaint which he signed. (Findings of Fact Paragraphs 9-10). Respondent saw this complaint which had been prepared by his associate for the first time on August 13, 1980 when he met with [H]. (Findings of Fact Paragraph 13).

Respondent claimed he did not sign the complaint because he considered it to be inadequate, and because [H] refused at that time to hire an expert. (Findings of Fact Paragraph 14). Respondent's explanation is inconsistent with his actions. Respondent was admittedly at that time pressuring [H] to sign a contingent fee agreement. Following the meeting on August 13, 1980, there was no further contact between Respondent and [H]. Respondent alleged that he considered it useless to redraft the complaint without [H's] consent to sign the contingent fee agreement. (Findings of Fact Paragraphs 15-16). However, respondent failed to produce a single writing to support his contention. Respond-

ent then failed to put the [ ] Authority and/or [ ] Corporation on notice of [H's] claim, nor did he file a summons or complaint. (Findings of Fact Paragraph 18). The legal services received by [H] consisted of a brief initial consultation; an alleged investigation of this factually simple situation by respondent's associate; the preparation of a complaint which was not signed by respondent; and a request for photographs which [H] timely supplied to respondent. (Findings of Fact Paragraph 20). Respondent's activity in behalf of [H] allegedly ceased because he balked at hiring an expert and because he would not agree to the contingent fee arrangement demanded by respondent. Respondent testified that he anticipated [H] would return within a short time. This matter was then neglected by respondent until [H] received the Rule 217 letter relating to respondent's suspension. (Findings of Fact Paragraph 21).

The hearing committee found a dispute concerning the scope of the representation, and that after the dispute arose "the Respondent did nothing" either to resolve the dispute or move the matter along. Thus, the hearing committee found "[t]he conclusion is inescapable that respondent paid but the most casual and summary attention to this matter from its inception." The hearing committee concluded that Respondent had violated his duties under both D.R. 6-101(A)(3) and D.R. 7-101(A)(1).

Charge VI: [I]

The petition for discipline alleged that respondent had undertaken to represent [I] ("[I]") in connection with pending criminal matters in [ ] and [ ] Counties and accepted a $2,500 retainer for the representation. The petition for discipline further charged that respondent had failed to respond to phone calls from [I] or his mother; failed to visit [I]

in the [   ] County Prison where he was incarcerated; failed to respond to a letter from [I]; failed to respond to letters and telephone calls from the [   ] County and [   ] County Public Defenders Offices; failed to meet with [I] when he visited respondent's office; and failed to arrange with the Public Defenders offices to pick up prtrial preparation materials.

After a hearing, because of conflicting testimony, the Disciplinary Counsel withdrew the charges against respondent, and the hearing committee concluded that a finding in favor of respondent was proper. No violation is therefore being considered in relation to this charge.

Charge VII: [J]

According to the petition for discipline, respondent was retained by [J] to represent her son in Juvenile proceedings. Despite accepting the retainer, Respondent allegedly failed to investigate the complaining witness; failed to interview [J's] son; failed to prepare for [J's son's] hearing; failed to attend the original hearing and a rescheduled hearing; and failed to return [J's] calls to discuss the case.

The hearing committee found that respondent, as alleged in the petition for discipline, did not attend the original hearing or the rescheduled hearing.[2]

---

2. This conduct by respondent aslo inconveniences the court and is prejudicial to the administration of justice. Respondent has demonstrated a history of showing no more regard for courts then he does for his clients. In a previous disciplinary matter (37 DB81) it was found that respondent had served as a master in a divorce case but did not file a report. After the attorneys for the parties repeatedly failed to get a response from respondent, they requested intervention by the court. By letters dated May 15, 1980, May 30, 1980, June 9, 1980 and June 16, 1980, the Honorable [L], Judge of the Court of Common Pleas of [   ] County and the judge who appointed respondent master in divorce in the aforesaid case, requested respondent to file a status report in the divorce case

32

The hearing committee chastised respondent for not returning phone calls to [J], but found that no Disciplinary violation was established.

Charge VIII: [K]

The petition for discipline alleges that respondent was retained by [K], who was accused of committing an assult on another person at the [  ] Navy Yard where [K] is a civilian employee. [K] paid respondent a retainer to investigate the incident and to protect his job. The petition for discipline alleges that respondent took no action to carry out his employment, and never even contacted the authorities at the Navy Yard. After notifying [K] of his suspension from the practice of law, respondent never returned the money paid by him, nor accounted for such money.

Although the hearing committee found that respondent had failed to return [K's] several phone calls, or respond to a letter written by [K], they concluded there was no Disciplinary violation. The basis of this conclusion was that there was no evidence respondent was ever called upon to do anything for [K] and "whatever action which [K] feared never materialized or, if it did, was taken care of." The hearing committee also found that there was no evidence that respondent did not earn his fee, although they also failed to find anything respondent did to earn the fee.

(Stip. 24). Respondent neglectd to respond to any of Judge [L's] letters. In September 1980, upon encountering Judge [L], respondent orally promised to file his master's report in the case. Respondent never provided counsel or Judge [L] with any reason for his failure to file a master's report in the divorce case. The divorce action eventually was discontinued and a new proceeding begun.

Charge IX: [M]

Respondent was retained by [M]. In connection with moving from one apartment to another, [M] had a dispute with her prior landlord who deducted $185 from the security deposit for alleged damages, and with the moving company who allegedly damaged some of her furniture. After being retained, respondent accepted a $500 retainer and wrote one letter to the former landlord, but took no further action. Respondent never discussed any response to this letter with [M]. (Id. at 251). In fact, [M] never heard anything further from respondent on either claim. (Id.) [M] did try to contact respondent for a period of approximately seven months, but received no reply from respondent, except for one letter asking her to call him. She repeatedly called, but her calls were not returned. (Id. at p. 252). Finally, in July, 1981, [M] received notice of respondent's suspension. Through her new lawyer, she sent two letters trying to obtain the files, but respondent did not reply to either of them or her calls. (Id. at pp. 254-256; P-76; P-77). [M] finally obtained her files several months later from the Disciplinary Board.

## III. DISCUSSION

The board agrees with the conclusion of the hearing committee that respondent has violated D.R. 6-101(A)(3), D.R. 7-101(A)(1) and 9-102(B)(3). This board also finds that the evidence supports a finding of numerous other violations of the Disciplinary Rules under eight of the nine charges.

The instant charges are but a continuation of respondent's long and irresponsible history of disciplinary recidivism. This proceeding represents the 12th separate matter and 16th through 23rd separate charges sustained against respondent. Re-

spondent is currently serving a two-year suspension from the practice of law for violations distressingly similar to the instant charges. These repeated violations, moveover, indicate a propensity to neglect the duty to communicate with clients; a failure to avoid delay, and to adequately protect and advance clients' interests. Respondent has a long and unfortunate history of inaccessibility to clients after assuming their representations, and dilatory and random responses to their legal needs. This tendency is aggravated by the fact that respondent tends to ignore, and thus to victimize, those clients who are helpless and need the timely delivery of quality legal services.

Respondent's untimely responses have also victimized the judiciary. The record shows several instances when respondent failed to show up in court, necessitating judicial inconvenience and delay, disservicing the legal profession and victimizing his clients and society. Respondent has inverted the legal process. Judges serve his convenience. His repeated errant conduct is an exercise in judicial diseconomy. No less than three judges are on record as having had to personally seek out respondent to get him to meet his obligations. For over three years, respondent delayed Judge [L's] resolution of a divorce action. For over six years, respondent failed to comply with a 1975 court order in the [A] matter herein (Charge I), and respondent missed two court appearances in the [J] matter herein (Charge VII).

Respondent erroneously contends that his community efforts should offset his failure to meet his duties to individual clients. However, meritorious respondent's intentions may be, this board is limited to reviewing the facts of record concerning his egregious, repeated and protracted derelictions of duty. A client has the right to expect that his legal matters

will be attended to promptly and professionally even by the most active and well-motivated lawyer. Despite respondent's own admission that his case load often makes it impossible for him to render satisfactory service to all of his clients, respondent continues to assume representation of additional clients and thus continues to jeopardize their legal rights and contribute to the creation of judicial backlog by not timely meeting his professional obligations.

This irresponsible pattern of conduct is illustrated by the fact that the hearing committee made specific findings on three charges (Charges IV, VII & VIII) that respondent had consistently failed to respond to phone calls and letters from clients. In another instance (Charge III), the hearing committee found that respondent had not sent out the Rule 217 notice to the client as required by the terms of his suspension from the practice of law.

However, the hearing committee irresponsibly recommended that no further discipline be imposed on respondent for the violations found. While the Office of Disciplinary Counsel did not file formal exceptions to the report of the hearing committee, Disciplinary Counsel did disagree with the hearing committee's recommendation that no discipline be imposed. (August 30, 1983 Letter of Disciplinary Counsel) Disciplinary Counsel was properly concerned with the policy and precedent of ignoring these violations, particularly in conjunction with respondent's extensive history of discipline and conspicuous recidivism.[3] Disciplinary Counsel also

3. 10/20/82—21 month suspension (2 charges); 3/11/82—informal admonition; 6/22/81—3 month suspension; 6/15/79—private reprimands; 3/9/77—informal admonition; 8/31/77—informal admonition; 6/18/76—informal admonition (after disciplinary hearing); 1/10/75—informal admonition;

pointed out that, under this court's decision in Office of Disciplinary Counsel v. Grigsby, 493 Pa. 194, 425 A.2d 730 (1981), the prior suspension of respondent does not exonerate his other misbehavior simply because it occurred prior to the date of that discipline.

After carefully reviewing the records in this matter, this board concludes that further discipline is mandated. Respondent's extensive disciplinary violations indicate that a meaningful sanction is necessary to deter his pattern of irresponsible conduct, which is detrimental to the interests of justice. Respondent's history of discipline indicates that, absent a severe sanction, he will continue to engage in further improper conduct, endangering the viability of the legal system, and victimizing both his clients and the integrity of the legal profession. The common thread running through respondent's violations is that he victimizes those who can afford it least. Respondent's professional misconduct throughout the course of his career is a sufficient basis for a sanction stricter than might be mandated by the instant matters standing along. Cf. Office of Disciplinary Counsel v. Campbell, 463 Pa. 472, 484, 345 A.2d 616, 622 (1975). See also Report and Recommendations of The Disciplinary Board of the Supreme Court of Pennsylvania in the disbarment of a chronically negligent attorney in In re Anonymous No. 51 D.B. 80, 19 D.&C. 3d 769, 773 (1982) ("There is no basis upon which to conclude that respondent's conduct will be different in the future. In fact, the record indicates that respondent's pattern of conduct is very likely to repeat in the future to the detriment of unwitting clients.")

---

5/29/73—censure by letter (Bar Assn., 2 charges); 3/8/71—letter of admonishment (Bar Assn.); 4/24/70—reprimand (Bar Assn., 3 charges).

## IV.  RECOMMENDATION

The board respectfully recommends to your honorable court that respondent [    ] be disbarred from the practice of law and that the court direct that all necessary expenses incurred by this board in the investigation and processing of the petition for discipline be borne by and paid for by said respondent.

Messrs. Daniels, McGinley, Schwartzman, McDonnell and Mrs. Hammerman concur with the factual findings and conclusions of law of the hearing committee, but dissent with the recommendation for disbarment and would recommend a two year suspension retroactive and to run concurrently with the present three month and 21 month suspensions.

## ORDER

PER CURIAM, April 16, 1984—Upon consideration of the record, briefs, and argument of counsel, it is hereby ordered that [Respondent], be and he is suspended for a period of two years retroactive to and to run concurrently with the present three month and twenty-one month suspensions. Respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.