**In re Anonymous No. 49 D.B. 90**

Disciplinary Board Docket No. 49 D.B. 90.
McGIVERN, *Member,* August 21, 1991—

## HISTORY OF PROCEEDINGS

On April 20, 1990, Office of Disciplinary Counsel (hereinafter, petitioner) filed a two-count petition for discipline against attorney [ ] (hereinafter, respondent) alleging that respondent had neglected a legal matter entrusted to him; had failed to promptly deliver to a third party funds to which that party was entitled; had engaged in dishonesty, fraud, deceit or misrepresen-

tation; and had communicated about the subject matter of representation with a party he knew to be represented by another attorney. The petition charged respondent with the following violations of the Rules of Professional Conduct:

## CHARGE I

(a) RPC 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client;

(b) RPC 1.5(c)—A lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, show the remittance to the client and the method of its determination, upon conclusion of a contingent fee matter;

(c) RPC 1.15(b)—A lawyer shall promptly notify a client or third person upon receipt of funds or other property in which the client or third person has an interest, shall promptly deliver to the client or third person any funds or other property they are entitled to receive, and shall promptly render a full accounting regarding such property upon request by the client or third person; and

(d) RPC 8.4(d)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

## CHARGE II

(a) RPC 4.2—A lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter;

(b) RPC 8.4(c)—A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

(c) RPC 8.4(d)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

Respondent failed to exercise his option to file an answer within the prescribed period of time, expiring on May 16, 1990, and the matter was referred to Hearing Committee [   ].

Because of a conflict, the matter was reassigned to Hearing Committee [   ] on July 23, 1990, chaired by [   ], Esquire, and included members [   ], Esquire and [   ], Esquire. A hearing was set for September 7, 1990, but due to several continuances, the hearing was rescheduled and held on November 9, 1990.

A motion to disqualify counsel was filed by petitioner on October 17, 1990. In reply, respondent filed a response and new matter on October 23, 1990. The motion to disqualify counsel was denied on October 29, 1990.

On April 9, 1991, the Hearing Committee entered its report, recommending that respondent receive an informal admonition based on the conclusion that no violation had transpired under Charge I and only a technical violation of RPC 4.2 and RPC 8.4(d) had prevailed under Charge II.

Petitioner filed a brief on exceptions on April 29, 1991, depicting matters it surmised had been overlooked by the Hearing Committee, and concluded that respondent should be "suspended for a lengthy period of time, if not disbarred."

On May 20, 1991, respondent filed a brief opposing exceptions concluding that the appropriate discipline was the imposition of an informal admonition, as the Hearing Committee had recommended.

This matter was adjudicated at the May 30, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts the following findings of facts which were stipulated by the parties:

(1) The petitioner, whose principal office is located at 300 North Second Street, Commerce Building, Third Floor, Harrisburg, Pennsylvania, 17101, is vested, under Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent, [ ], Esquire, was born in 1941, admitted to practice law in the Commonwealth of Pennsylvania in 1972, and has maintained his office for the practice of law at [ ].

## CHARGE I

(3) During the summer of 1987, [A] corresponded with respondent regarding possible representation of him in a personal injury suit originating from a 1985 automobile accident against [B].

(a) [A] had previously retained representation in the above stated matter from attorneys [C] and [D].

(b) In or about November 1987, respondent entered his appearance on behalf of [A] (hereinafter, client) in this civil suit.

(4) The Department of Public Assistance (hereinafter, DPW) had furnished the client with public assistance.

(5) On January 29, 1988, respondent notified DPW's [E] concerning respondent's representation of the client and he requested the amount of the monetary obligation due to DPW by the client.

(6) In or about April 1988, DPW made full disclosure of the client's remaining debt up to at least early April 1988.

(7) In late June 1988, the civil suit was settled against [B] for $45,000, plus $98.33 in costs. After the client and his wife endorsed both settlement checks, respondent deposited them into an escrow account on June 24, 1988.

(a) Respondent convened with the client on July 18, 1988, for the distribution of his portion of the settlement proceeds amounting to $12,253.38.

(b) Retaining $11,710.70, respondent deposited this amount into the escrow account for the purpose of reimbursing DPW on behalf of the client.

(c) The remaining funds, were utilized for remuneration of all attorney fees and satisfaction of the client's various other outstanding debts for which the client had specifically directed payment.

(8) Respondent failed to provide the client with a written statement manifesting the matter's conclusion and depicting both the client's remittance and method of its determination.

(9) On July 18, 1988, and prior thereto, respondent advised the client that he would negotiate with DPW to arrive at a compromise of the amount due to DPW.

(10) Respondent neither remitted any funds nor arrived at a commitment to do so with either [F] or any other DPW representatives.

(11) By letter dated September 12, 1988, DPW's claims investigation agent, [E], contacted respondent involving the following matters:

(a) Respondent's failure to respond to DPW's numerous telephone calls; and

(b) Respondent's failure to distribute escrowed funds belonging to DPW.

(12) Respondent failed to respond or take any action in regard to this September 12 letter.

(13) At no time did respondent have contact with [E] or enter into negotiations with him in order to reduce the amount due DPW on behalf of the client.

(14) On or about October 31, 1988, [G], assistant counsel for DPW, entered confessed judgment against the client in the Court of Common Pleas of [ ] at nos. [ ] and [ ], in regard to the medical and cash assistance received by the client from DPW.

(a) On November 1, 1988, a writ of execution was issued in regard to both of the suits naming respondent as garnisher.

(b) On November 7, 1988, the writ of execution issued in regard to [ ] was served upon respondent by the sheriff of [ ] County.

(15) By letter dated November 25, 1988, [H], Esquire (hereinafter, opposing counsel) notified respondent that the client had contacted her and then she requested the following items:

(a) A photo copy of the check to DPW in order to clear the liens from the client's property, if in fact such a check was distributed; and

(b) A photo copy of the settlement agreement with [B].

(16) Respondent failed to provide opposing counsel with the requested documentation.

(17) On November 29 or 30, 1988, respondent contacted opposing counsel to discuss her letter dated November 25, 1988.

(18) In satisfaction of the client's DPW debt, respondent remitted a $12,510.70 check dated December 20, 1988, to [G], Esquire of the DPW Office.

(19) On February 3, 1989, complete satisfaction of DPW's suits at [  ] and [  ] was obtained.

## CHARGE II

(20) In early January 1989, [I] (hereinafter, client) had retained respondent in a domestic relations matter.

(21) Since approximately that same time, respondent was knowledgeable of the fact that the client's wife, [J] (hereinafter, opposing party) had retained the legal services of attorney [H] (hereinafter, opposing counsel).

(22) On or about July 21, 1989, respondent filed or caused to be filed a complaint in divorce in the Court of Common Pleas of [  ] County at no. [  ] C.P. 1989 on behalf of the client.

(23) Opposing counsel filed an answer to the complaint in divorce, with a counterclaim on behalf of the opposing party on October 2, 1989.

(24) By letter dated December 19, 1989, opposing counsel corresponded with respondent concerning a potential problem with the client's hospital and medical insurance maintained for the opposing party.

(25) On or about December 21, 1989, respondent initiated a consultation in his office with the client and the opposing party.

(a) The meeting's purpose was to transfer the title to the former couple's jointly owned mobile home.

(b) Respondent failed to advise opposing counsel or seek her consent to meet with the opposing party.

(c) Both the client and opposing party executed affidavits of consent.

(26) On or about January 3, 1990, respondent filed both affidavits of consent for the divorce proceeding.

(27) Also, on that same day, respondent entered a praecipe to transmit the record, thereby requesting that the final divorce decree be issued.

(28) Subsequently, upon review of the documents, Judge [K] noticed that the affidavit of consent executed by the opposing party did not conform to the usual form ordinarily utilized by the opposing party's attorney.

(29) The judge contacted opposing counsel regarding this matter and was advised that she was unaware of any affidavit of consent executed by her client.

(30) On or about January 9, 1990, the judge requested that respondent confer with her in chambers.

(a) The judge advised respondent that she was cognizant of the circumstances in which respondent had moved to finalize his client's divorce proceedings without the knowledge and consent of the opposing party's counsel.

(b) Respondent admitted that he had the opposing party execute an affidavit of consent which he had filed. Furthermore, respondent admitted that these actions were completed without the knowledge and consent of opposing counsel.

(c) Respondent advised the judge that he would "make it good" with opposing counsel, or words to that effect.

(31) On the same day as his conference with the judge, respondent met with opposing counsel and her associate.

(a) Respondent notified opposing counsel that a mistake had been detected in regard to the opposing party's affidavit of consent.

(b) Opposing counsel informed respondent of the voidable nature of the affidavit of consent and she requested that respondent initiate the withdrawal of the consent.

(c) Respondent assented to the withdrawal.

(32) Approximately one week later, having encountered respondent at a social function, the judge was informed that the divorce proceeding had been resolved after respondent had discussed it with opposing counsel.

(33) By letter dated January 11, 1990, the judge notified respondent that she would not finalize the divorce until receipt of the withdrawal of opposing counsel's answer and counterclaim.

(34) By letter dated January 18, 1990, respondent acknowledged opposing counsel's prior December 19, 1989, letter.

(a) Respondent addressed the issue of the affidavit of consent executed by the opposing party and filed by him.

(b) Respondent requested that opposing counsel contact him, at her convenience, as to any suggestions she may have in order to finalize the divorce proceedings.

(35) On January 22, 1990, opposing counsel sent correspondence to respondent which expounded his mandatory withdrawal of the affidavit of consent. Once withdrawn, opposing counsel would withdraw her answer and counterclaim and file a new affidavit of consent.

(36) Subsequently, in the early part of February 1990, respondent approached the judge to discuss this matter with her.

(a) Having informed the judge of respondent's agreement with opposing counsel to file a petition to withdraw the affidavit of consent, respondent inquired about how he should initiate such a petition.

(b) The judge advised respondent to draft a petition, obtain opposing counsel's approval, and file it.

(c) Furthermore, the judge informed respondent that upon submission of such a petition, the void affidavit of consent would be disregarded and opposing counsel could submit a valid affidavit of consent on behalf of the opposing party.

## CONCLUSIONS OF LAW

Respondent has been found guilty of violating the following Disciplinary Rules:

## CHARGE I

The board has determined that this charge was unfounded and that no violation had occurred. Although respondent delayed payment to DPW for his client's expenses and failed to provide the client with a written disbursement sheet of settlement funds, this action resulted in saving the client over $5,000.

## CHARGE II

(a) RPC 4.2—A lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter; and

(b) RPC 8.4(d)—A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

## DISCUSSION

The petitioner and respondent have entered into an extensive stipulation of facts which support a determination that respondent's conduct constitutes a violation of the Rules of Professional Conduct. Thus, the sole issue before the board is the determination of appropriate discipline. In determining the proper sanction to be imposed, both the misconduct and the unique circumstances to that particular case must be scrutinized. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 281, 472 A.2d 186, 190 (1983).

The board concurs with the Hearing Committee in dismissing the first charge and allocating disciplinary measures for Rule violations in the second charge, but the board does not adopt the Hearing Committee's recommendation of an informal admonition. This is a

proper action since disciplinary matters are heard de novo at every stage of adjudication. See *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872, 875 (1986).

As directed by the Supreme Court of Pennsylvania, the board's duty is to look at the "total picture" of professional misconduct in determining an attorney's continued fitness to practice law. *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616, 622 (1975). In effectuating a thorough inquiry into the totality of the circumstances, habitual disciplinary violations cannot be disregarded. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730, 733 (1981). It was stated within *In re Anonymous No. 28 D.B. 85,* 39 D.&C.3d 88 (1986):

"Under §89.151(9) of the Rules of the Disciplinary Board, any previous discipline administered to a respondent appears to be admissible in order to determine the appropriate discipline.... [I]t has been determined that the commission of a subsequent disciplinary infraction waives the confidentiality provided for in Rule 93.102, and allows even private discipline to be admissible in the dispositional stage under Rule 89.151."

The instant charges which may appear to be relatively minor in nature, are but a continuation of respondent's long and irresponsible history of disciplinary recidivism. Respondent has been the subject of disciplinary proceedings on eight previous occasions. Seven of these instances involved allegations of neglect and resulted in informal admonitions. The informal admonitions were administered on February 23, 1976; January 15, 1980; December 21, 1981; September 30, 1981; April

19, 1982; January 17, 1985; and April 16, 1985. The final instance of disciplinary action for ethical misconduct involved respondent's two-year suspension from the practice of law commencing on October 6, 1983.

Respondent is now brought before the board to be disciplined for having instituted the execution of an affidavit of consent without the benefit of that person's attorney being present. In review of the instant case's unique circumstances, respondent's extensive disciplinary violations depict that a more stringent sanction than an informal admonition is necessary to deter his pattern of irresponsible conduct, which is detrimental to the interests of justice. *In re Anonymous No. 21 D.B. 82,* 29 D.&C.3d 22 (1984).

Absent a more severe sanction, respondent will continue to engage in further misconduct, threatening both the viability of the legal system and the integrity of the legal profession. *Id.* In cases where recidivism is established, the sanction imposed could be anything from a private reprimand to disbarment. *In re Anonymous No. 8 D.B. 88,* 27 D.&C.3d 378 (1983) (After six informal admonitions, the respondent was sanctioned with a private reprimand for a charge of misrepresentation); *In re Anonymous No. 18 D.B. 82,* 25 D.&C.3d 30 (1983) (After determining that both informal admonitions and private reprimands had minimal effect on correcting the respondent's misconduct, a public censure was imposed); *In re Anonymous No. 21 D.B. 82,* 29 D.&C.3d 22 (1984) (A suspension was issued for a respondent who had been brought before the board for numerous other violations involving his victimization of clients who could least afford it); and *In re*

*Anonymous No. 51 D.B. 80,* 19 D.&C.3d 769 (1981) (The respondent was disbarred for multiple instances of accepting client fees, yet failing to further their claims).

The instant case is most similar to *In re Anonymous No. 8 D.B. 83,* 27 D.&C.3d 378 (1983), in which the respondent had been disciplined with six informal admonitions and the board issued a private reprimand for his seventh violation involving neglectful conduct. In that case, the Supreme Court of Pennsylvania concurred with the board's conclusion that "the pattern of conduct revealed in this case warranted an increase in the degree of discipline over and above an informal admonition." The court determined that a private reprimand was the appropriate discipline.

Similarly, a private reprimand should be imposed in the instant case. It is mandated that a greater form of discipline be imposed than an informal admonition due to the fact that respondent's pattern of disregarding the Rules of Professional Conduct has continued despite his seven previous informal admonitions. In his defense, the present violation is mitigated because the opposing party initiated the discussion of completing the divorce and respondent was merely accommodating her request. Respondent has acknowledged that he engaged in misconduct. The Hearing Committee found that the misconduct constituted a technical violation of RPC 4.2 and 8.4(d). While we consider the nature of respondent's offense to be serious, respondent was neither attempting to deceive opposing counsel nor was he devising a plan with the dishonest intent of benefiting his client. The record discloses that the opposing party was not harmed by respondent's misconduct. Further-

more, respondent has exhibited extreme cooperation in regard to these proceedings and has had extensive involvement in community activities including the March of Dimes, [    ] EMS Council, and the [    ] County Law Enforcement Association.

The Supreme Court of Pennsylvania has held that in situations in which an attorney has performed legal services for a person without advising that person to seek outside counsel, an informal admonition is properly ordered when no harm has resulted to that person. *In re Anonymous No. 47 D.B. 77,* 8 D.&C.3d 241 (1978). Presently, respondent is in violation of this same technical violation of not advising the opposing party to seek counsel; however, respondent's recidivism must be balanced against the mitigating factors, thus warranting an increase in discipline from respondent's previously administered informal admonitions. After careful consideration of the misconduct as balanced against the mitigating factors, we conclude that a private reprimand is the appropriate sanction.

## DETERMINATION

Based upon the foregoing findings and discussion, the Disciplinary Board of the Supreme Court of Pennsylvania determines that respondent [    ] shall receive a private reprimand. Costs shall be paid by respondent in this proceeding pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Eckell, Hill, Leonard and Sloane did not participate in the adjudication.

## ORDER

And now, August 21, 1991, upon consideration of the report and recommendation of Hearing Committee [   ] filed April 9, 1991; it is hereby ordered that the said [respondent] of [   ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by the respondent.