## In re Anonymous No. 103 D.B. 90

Disciplinary Board No. 103 D.B. 90.

KELLER, *Chair,* April 14, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

### HISTORY OF PROCEEDINGS

On September 12, 1990, Office of Disciplinary Counsel filed a petition for discipline against [    ].  The petition alleged that respondent had violated five Disciplinary Rules resulting from his failure to return the unearned portion of the prepaid fees after his representation of the client had been terminated.  A summary of the alleged violations, as set forth in the petition for discipline, is as follows:

(a) R.P.C. 1.5(b) — requiring an attorney to communicate to his client, in writing, the basis or rate of his fee;

(b) R.P.C. 1.15(a) — requiring an attorney to keep property of clients acquired in the course of representation separate from his own property;

(c) R.P.C. 1.15(b) — requiring an attorney to promptly deliver any property which a client is entitled to receive and to promptly render a full accounting, upon request, regarding such property;

(c) R.P.C. 1.15(c) — requiring an attorney to hold, inviolate, funds in which both he and the client claim an interest which is disputed until the dispute is resolved; and

(e) R.P.C. 1.16(d) — requiring that upon termination of representation an attorney surrender property to which the client is entitled.

Respondent failed to exercise his option to file an answer within the prescribed period of time, expiring on October 7, 1990.

On October 12, 1990, the matter was referred to Hearing Committee [     ], chaired by [     ], Esq., and including members [     ], Esq., and [     ], Esq.  A hearing was held on January 4, 1991, after an extension beyond the 60-day limit had been granted due to the lack of availability of the parties.

On March 27, 1991, the Hearing Committee filed its report and recommended that respondent be suspended for a period of six months, but that the entire six months of the suspension should be stayed and respondent be placed on probation for a period of two years under the conditions of Disciplinary Board Rule 89.291(c).

The matter was adjudicated at the May 30, 1991 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The Disciplinary Board adopts and incorporates by reference herein the following findings of fact which have been extensively stipulated to by the parties:

(1) Petitioner, whose principal office is situated at Commerce Building, 300 N. Second Street, Harrisburg, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving misconduct of any attorney admitted to practice and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1954 and admitted to the practice of law in the Commonwealth of Pennsylvania on October 22, 1984. He currently maintains his practice as an associate in the law office of [A] & Associates, [    ].

(3) On December 23, 1988, [B] was involved in an automobile accident. [B] was administered a breathalyzer test which revealed that his blood alcohol level slightly exceeded the legal limit.

(4) A summons was issued to [B] on January 3, 1989 for driving under the influence. Shortly thereafter, he met with respondent at his office, then located at [    ].

(5) [B] retained respondent to represent him in the DUI charge after respondent stated that he had a "strong case" and could "beat" the DUI charge by utilizing the testimony of an expert witness whom respondent knew.

(6) Respondent failed to set forth the basis or rate of his fee in writing; thus, the exact terms of the fee are disputed. Respondent contends that he was unaware of R.P.C. 1.15(b)'s requirement that an attorney must communicate a written fee rate to the client. Both the client's and respondent's recollection of the matter are as follows:

(a) Client: The cost of representation for the preliminary hearing would be $400 in legal fees, plus approximately $60 for a stenographer. (The stenographer actually charged $51, which amount the client paid to respondent.) If the case went to court, the cost of representation would be $1,200 in legal fees, $400 for an expert witness, and $400 in courtroom fees.

(b) Respondent: Respondent quoted the client a $2,000 flat fee for trial, plus costs, including the expert's fee, of $1,000 if a plea agreement was reached.

(7) In January 1989, respondent represented the client at his preliminary hearing. The case was bound over for trial and docketed at no. [    ] Criminal 1989 ([    ] County).

(8) Between January 24, 1989 and his arraignment on May 23, 1989, the client remitted to respondent the amount of $2,500 plus an additional $51 for the cost of a transcript. However, respondent failed to deposit or maintain these funds in a separate account until they were earned by him or otherwise properly expended on the client's behalf.

(9) Respondent having entered a plea of not guilty for the client, the case was scheduled for trial on June 19, 1989, but was later continued.

(10) In June 1989, respondent departed from his solo practice and became an associate with the firm of [C] in [    ], Pa. At that time, respondent failed to deposit into any accounts of that law firm any of the fees and costs which had been advanced by the client.

(11) By letter dated July 28, 1989, respondent notified the client that his trial date had been rescheduled for the week beginning September 11, 1989. This trial date was later postponed.

(12) In or about September 1989, respondent notified the client that the expert witness' testimony would not benefit the case. Respondent further informed the client that he had paid the expert $250 and that he would have to pay an additional $250 to have the expert testify at trial.

(13) Based on his reassessment of the case, respondent recommended that the client consider voluntary enrollment in the ARD program. This information agitated the client since it was contrary to respondent's initial assessment. Also, the client knew he could have applied for ARD on his own without having expended money on legal fees.

(14) On September 22, 1989, respondent filed a request for continuance and waiver of right to a speedy trial, for the purpose of having the client considered for entry into the ARD program. This request was granted.

(15) By letter dated November 28, 1989, [D], Esq. (hereinafter, new counsel) informed the client that he was taking on the client's representation in the DUI charge due to the fact that respondent was no longer employed with the firm of [C].

(16) The new counsel notified the client of his acceptance into the ARD program as of December 8, 1989.

(17) The client attempted to contact respondent at his home to request an itemized billing and the return of the unearned and unexpended portion of the approximately $2,500 paid. Respondent's wife informed the client that respondent had been hospitalized.

(18) On November 29, 1989, having sought help for alcoholism, respondent was admitted to the [    ] Center, [    ] Hospital, [    ], Pa., for treatment of his chemical dependency. He was released on December 22, 1989, after a stay of 23 days.

(19) In the latter part of December 1989, after having learned that respondent had returned home from the hospital, the client began calling respondent's home as often as three or four times per week. On the rare occasion that the client spoke to respondent, he reiterated his request for a billing statement and the return of the unearned fees. Respondent repeatedly promised to schedule a meeting with him, but failed to do so.

(20) During one of the telephone calls, respondent acknowledged that he owed the client a refund of at most, $700.

(21) By letter dated January 12, 1990, the client informed respondent of the following, inter alia:

(a) After their last three telephone conversations, he was upset that respondent could not find time to meet with him;

(b) He had paid respondent $2,500; and

(c) According to his calculations, which were set forth in the letter, respondent owed him a refund of $1,680.

(22) Respondent failed to reply to this letter.

(23) By cover letter dated April 25, 1990, a D.B.-7 letter of inquiry dated April 4, 1990 was sent by Office of Disciplinary Counsel investigator [E] to respondent at the law office of [A], [    ], and was received in that office on April 26, 1990.

(24) Having received no answer from respondent, on May 21, 1990, investigator [E] contacted him at his office to determine whether he had received the D.B.-7 letter

and whether respondent had intended to provide petitioner with his position. Respondent indicated the following:

(a) He had received the D.B.-7 letter of inquiry;

(b) He had informed the client that he would refund a portion of the funds, but he did not believe that the client was entitled to $1,600; and

(c) He had begun to work in March 1990, and that he was then able to refund the unearned fees.

(25) Respondent was extended an additional 10 days from May 21, 1990, within which to respond to the D.B.-7 letter. However, respondent failed to reply.

(26) As of November 1990, respondent had failed to contact the client, failed to provide an accounting, and failed to refund the client's funds.

(27) On November 13, 1990, the client initiated a civil claim against respondent by filing a trespass and assumpsit complaint with District Justice [F], wherein the client requested a judgment in the amount of $1,800, plus costs, against respondent. While a hearing was initially scheduled for December 10, 1990, it had been continued until January 10, 1991 upon request of respondent. Respondent, through counsel, offered to settle the case for $1,250.

(28) [G], M.D., a psychiatrist specializing in addictions, has met with respondent on numerous occasions over several months. Based on respondent's history of addictions, Dr. [G] has concluded that since at least 1975, respondent addictively used a variety of drugs, including alcohol and, beginning in 1987, cocaine.

(29) During the time relevant to these proceedings (from January 1989 to November 1990), respondent's mental condition was seriously disturbed and his judgment impaired due to his addiction to mood-altering substances.

(30) Respondent also suffers from long-standing depression beginning in his adolescence and continuing to

the present. This depression contributed to his inability to address work-related problems during the relevant time frame. Currently, respondent is taking an antidepressant (Prozac) under Dr. [G's] direction.

(31) During the relevant time frame, there was a direct and substantial causal relationship between respondent's mental condition, due to both his addictions and his depression, that is linked to his derelictions of ethical duty as a lawyer.

(32) Since December 1989, respondent has been a regular and active member of both Alcoholics Anonymous and Narcotics Anonymous' 12-step programs which focus on developing sobriety.

(33) Respondent's failure to immediately remedy his addiction, when he initially became sober in early 1990, is explained by Dr. [G] as a function of the gradual addiction recovery process. This process requires 12 to 18 months of sobriety for the recovering addict to regain normal insight, to begin thinking clearly, and to fully appreciate the consequences of his own conduct.

(34) On March 1, 1990, respondent was informally admonished by Disciplinary Counsel for violations of R.P.C. 1.3 and R.P.C. 1.4 relative to respondent's failure to file an amended post-conviction petition on behalf of a client, despite periodic communications from the client inquiring into the status of the case, which respondent also failed to respond to, and two contacts from petitioner.

## CONCLUSIONS OF LAW

As has been stipulated, respondent's aforementioned conduct is in violation of the following Rules of Professional Conduct:

(a) R.P.C. 1.5(b) — requiring an attorney to communicate to his client, in writing, the basis or rate of his fee;

(b) R.P.C. 1.15(a) — requiring an attorney to keep property of clients acquired in the course of representation separate from his own property;

(c) R.P.C. 1.15(b) — requiring an attorney to promptly deliver any property which a client is entitled to receive and to promptly render a full accounting, upon request, regarding such property;

(d) R.P.C. 1.15(c) — requiring an attorney to hold, inviolate, funds in which both he and the client claim an interest which is disputed until the dispute is resolved; and

(e) R.P.C. 1.16(d) — requiring that upon termination of representation an attorney surrender property to which the client is entitled.

## DISCUSSION

There are two issues presented to the board in this matter. First, a determination of whether respondent's conduct constituted a violation of the Rules of Professional Conduct must be made. Second, if a violation is established, the appropriate discipline must be imposed after viewing any mitigation existing at the time of the misconduct. Since respondent has candidly admitted the rules violated, the sole issue before the board is the determination of the appropriate discipline in light of the mitigating factors.

The record indicates that respondent was retained to represent [B] in a DUI charge in December 1988. Respondent's initial mistake was failing to provide [B] with a written fee statement detailing the basis of his fee. Respondent has admitted that this constituted a violation

of R.P.C. 1.5(b), which requires an attorney to communicate to the client, in writing, the basis or rate of the attorney's fees.

By May 1989, the client had transmitted $2,500 for future legal fees to be incurred plus an additional $51 for a transcript. Despite the fact that R.P.C. 1.15(a) requires an attorney to maintain a separate account for a client's property, respondent failed to preserve the identity of his client's funds.

Ultimately, respondent's greatest infraction was his failure to zealously represent his client. Respondent effectuated minimal accomplishments in defending [B] against the DUI charge. In fact, the client's case concluded with his acceptance into an ARD program which could have been instituted without expending any legal fees.

At that time, it became apparent to [B] that he would no longer be needing respondent's legal services. Thus, in 1989, the client contacted respondent on numerous occasions for the purpose of having respondent refund the unearned portion of the paid funds. Respondent neither provided the client with an accounting of his performed services nor delivered the unearned portion of the fees. Respondent has admitted that these actions constituted violations of both R.P.C. 1.15(b)—which requires an attorney to render a full accounting of client property, as well as prompt delivery of property belonging to the client, and R.P.C. 1.16(d), which requires an attorney to surrender client property upon termination.

Respondent's conduct clearly is a violation of the Rules of Professional Conduct warranting discipline. It is inexcusable that an attorney would provide inadequate representation when that attorney has been remitted advanced legal fees. *In re Anonymous No. 58 D.B. 77 & 9 D.B. 78*, 14 D.&C.3d 11 (1980). Furthermore, an attorney is obligated to give a full accounting of a client's funds

and make a "full and immediate payment of funds that are due and owing the client." *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981).

Although respondent's misconduct is serious, significant mitigating circumstances exist in this case. At the time respondent engaged in this misconduct, beginning in January 1989, his mental condition was seriously disturbed and his judgment impaired due to his addiction to mood-altering substances. In order for respondent's alcoholism, drug addiction, and diagnosed depression to be considered as mitigating factors such that probation would be warranted, respondent must prove by clear and convincing evidence that these factors were a causal factor in his misconduct. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989); Disciplinary Board Rules §89.293.

At the hearing, respondent testified that he initially consumed alcohol heavily during high school and continued to drink excessive amounts of alcohol, as well as become dependent on drugs, throughout his college years. Respondent graduated from college in 1978 and became a member of the bar in 1984.

In 1986, respondent became aware that alcohol was beginning to noticeably affect his work. Then in 1987, he was exposed to cocaine which caused him to "freeze" when he attempted to motivate himself to complete a case. Respondent was failing to advance his cases and failing to communicate with the clients. His close, personal friend of over 20 years testified that in 1988, he had observed behavioral changes in respondent; thus, confirming respondent's statements.

Finally, the downward spiral of respondent's life took a turn for the better on November 29, 1989, when respondent admitted himself into an addiction program. Also, in furtherance of his desire to eliminate his ad-

dictions, on October 23, 1990, respondent sought the treatment of [G], M.D., a psychiatrist specializing in addictions. It was only then that respondent was made aware of the fact that he had been suffering from a prolonged and profound long-term depressive disorder.

In regard to respondent's well-being, two letters written by Dr. [G] were entered into evidence as stipulations of fact in which he concluded that respondent's misconduct was directly linked to the "confusion and mental mismanagement" that were inherent in respondent's "chemical dependency, alcoholism and depression." Furthermore, the doctor said it was common for addictions, such as those experienced by respondent, to render a person immobile and frozen while not knowing what to do.

In consideration of all the evidence and testimony, the board is convinced that the *Braun* test is met and that respondent's misconduct was causally linked to his drug and alcohol dependencies, as well as his chronic depression. The Supreme Court of Pennsylvania has considered these factors to be mitigation resulting in the reduction of disciplinary sanctions for ethical violations. *In re Anonymous No. 37 D.B. 88,* 50 D.&C.3d 526 (1989) and *In re Anonymous No. 27 D.B. 76,* 5 D.&C.3d 26 (1977).

In addition, the record strongly indicates that both respondent's addictions and his depression are under control at the present time. Since his hospital admittance in 1989, respondent has abstained from alcohol and controlled substances. Also, regularly he has attended Alcoholics Anonymous meetings, as well as the meetings of another group geared specifically toward attorneys recovering from addictions.

Since March 1990, respondent has demonstrated that he can engage in the practice of law without causing the courts or the profession to fall into disrepute. Re-

spondent has re-established himself in the practice of law with a small legal practice under the direction of [A], Esq. Attorney [A] has testified that respondent is punctual in arriving to work and he has successfully completed all his duties in a timely manner since his employment at the firm. Respondent's boss also stated that there has been no evidence of drugs or alcohol in respondent's possession during this time. It is unlikely that respondent's practice of law will bring harm to the public. Respondent is completely aware of the harmful effects of his addictive behavior and has taken steps to rebuild his life.

While the board is mindful that respondent clearly violated the Rules of Professional Conduct, it must also consider the primary function of the disciplinary system—which is to determine the fitness of an attorney to continue to practice law. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); see also, *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975). The Supreme Court of Pennsylvania has held that this task is accomplished by balancing "a concern for public welfare with a respect for the substantial interest that an attorney has in continuing his professional involvement in the practice of law." *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981).

In consideration of the aforementioned mitigating factors, and pursuant to the court's holding in *Braun,* the board believes that respondent is an appropriate candidate for probation which is one of six types of discipline that may be imposed upon an attorney for misconduct in violation of Disciplinary Rules. See Pa.R.D.E. 204. It is believed that respondent will benefit from continued counseling as is evidenced by the tremendous progress he has accomplished since its inception.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [     ], be suspended from the practice of law for a period of six months, that the suspension be stayed in its entirety, and that the respondent be placed on probation for a period of two years subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board-approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, outpatient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

The board recommends further that respondent be ordered to pay the expenses of investigating and prosecuting this matter, pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Gilbert and Schiller recused themselves.

Messrs. Eckell, Hill, Leonard and Sloane did not participate in the adjudication.

## ORDER

And now, April 14, 1992, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated September 10, 1991, are approved and it is ordered that [respondent] be suspended from the practice of law for a period of six months, that the suspension be stayed in its entirety, and that respondent be placed on probation for a period of two years, subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind-altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor for respondent in accordance with Disciplinary Board Rule 89.293(c);

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification on a board-approved form to his sobriety monitor;

(7) Respondent shall undergo any counseling, out-patient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly-executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(9) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by the respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

It is further ordered that the respondent shall pay the expenses of investigating and prosecuting this matter pursuant to Rule 208(g)(1), Pa.R.D.E.